## T. E. POUNDS v. M. B. COBURN, Appellant.

**Division Two, February 18, 1908.**

1. **INSTRUCTIONS: Correct as a Whole.** If, taking the instructions as a whole, they presented the law of the case fairly to the jury, the judgment should not be disturbed because of some technical objection to one or more of them, unless the subject of objection be of a character such as to prejudice the rights of the losing party.

2. **DAMAGES: Measure: Sale of Stock.** Where the contract for the sale of stock of a company, placed in escrow, and not redeemed, fixed the price defendant was to pay for it, the measure of damages is the sum due under the contract.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

AFFIRMED.

*A. E. Spencer, Geo. D. Reynolds* and *George V. Reynolds* for appellant.

(1) The original written contract between the parties was only an option as to the defendant, and did not impose upon the defendant any obligation whatever. Dunaway v. Day, 163 Mo. 415; Huggins v. Safford, 67 Mo. App. 469; Glass v. Rowe, 103 Mo. 539; Ramsey v. West, 31 Mo. App. 676; Barker v. Critzer, 35 Kan. 459. (2) The court erred in instructing as to the measure of damages. The action is on

the alleged contract to buy certain shares of stock, part payment and failure and refusal to pay the balance. Possession of the stock never passed to defendant. Such of it as was deposited in escrow remains with the depositary, to be delivered to defendant if certain specified payments are made, and otherwise to be returned to plaintiff on demand. In other words, plaintiff retains control of the stock, and also has the $1,800 paid him by the defendant. • Specific performance of such contracts to purchase cannot be enforced. If the contract was as charged in the petition, then plaintiff was only entitled to recover the difference between the agreed price (less payments made) and the reasonable value of the stock at the time and place fixed for delivery. The courts will not specifically enforce defendant's contract, by requiring him to pay the full price and take the stock, any more than they would compel plaintiff specifically to convey the stock had default been on his part. Rickey v. Tenbroeck, 63 Mo. 563; Bank v. Ragsdale, 171 Mo. 185; Warren v. Mfg. Co., 161 Mo. 124; Nelson v. Hirsch & Sons Co., 102 Mo. App. 514; 2 Joyce on Damages, p. 1700, sec. 1654; Mobley v. Smith, 6 Atl. 694; Holmes v. Moore, 53 Hun 58; Cook on Stockholders (3 Ed.), secs. 334, 336.

*McAntire & Scott* for respondent.

(1) Defendant cannot now change the theory upon which he tried the case, because he is bound by the course of action he pursued during the trial, even though that course be inconsistent with the pleadings, which it was not in this case. Davis v. Brown, 67 Mo. 313; Slater v. Supreme Lodge, 88 Mo. App. 177; Ruling v. Bandera, 87 Mo. App. 349; Culver v. Smith, 82 Mo. App. 390. (2) Where the defendant asks instructions on the same line and on the same theory that the plaintiff asks his instructions, while they may have been technically erroneous, the court will not reverse

the case on that account.    In this case defendant's instructions were given on the same line as plaintiff's instructions were given.    Davis v. Brown, 67 Mo. 313; McGowan v. St. Louis Ore & Steel Co., 109 Mo. 535. Cook lays down the doctrine to be that the vendor of shares of stock has three remedies:    First.  He may tender the stock and sue for the price.    Second.  He may sell the stock after notice to the vendee and then sue for the difference.    Third.  He may retain the stock and sue for the difference between the contract and market price.    Cook on Stockholders (3 Ed.), sec. 338; Ozark Lumber Co. v. Chicago Lumber Co., 51 Mo. App. 555; Mobley v. Smith, 6 Atl. 694. . (3) The court did not err in instructing the jury that they should find for the plaintiff for the full contract price.    In this case the parties themselves fixed the measure of compensation, and where the contract itself fixes the compensation the measure of damages is the contract price.    Bowman v. Brannon, 111 Mo. 343; 1 Cook on Stockholders (3 Ed.), sec. 336; Walker v. Nixon, 65 Mo. App. 326; Ozark L. Co. v. Chicago L. Co., 51 Mo. App. 555; Dobbins v. Edwards, 18 Mo. App. 307; Anderson v. Frank, 45 Mo. App. 486.

BURGESS, J.—This is a suit to recover the sum of $6,200, with interest, which plaintiff claims is owing him by defendant by reason of a written contract as modified or supplemented by an oral agreement, which said written contract is as follows:

"New York, N. Y., Oct. 14, 1901.
"Memorandum of agreement for sale of one hundred shares of stock of the Mohaska Zinc Company, belonging to T. E. Pounds, to M. B. Coburn, for the sum of eight thousand dollars, on the following terms:
"$1,500 cash when the agreement is signed between the Mohaska Zinc Company and M. B. Coburn.

$1,000 cash to be paid on or before November 1, 1901.

$2,500 cash to be paid on or before December 1, 1901.

$1,500 cash to be paid on or before January 1, 1902.

$1,500 cash to be paid on or before February 1, 1902.

"Said stock and assignment to be placed in escrow subject to above payments.

"If payments are made as above, said stock and assignments are to be delivered to said M. B. Coburn.

"If payments are not made as above, said stock and assignments are to be returned to T. E. Pounds, at any time on demand, and this agreement to be null and void and of no effect.

"Signed in duplicate.

"T. E. POUNDS,
M. B. COBURN."

It appears that on the 17th day of July, 1899, one Randall Berners Choldmondeley assigned, for a valuable consideration, his interest in a mining lease on 160 acres of land to Wm. D. Swart, trustee, of Nashua, New Hampshire; that, thereafter, on August 1, 1899, said Swart, as trustee, after the organization of the company called the Mohaska Zinc Company, assigned thereto all his interest in said lease; that subsequently said company issued to plaintiff, T. E. Pounds, one hundred shares of its preferred stock and a certificate for three hundred shares of common stock, and that fifty shares of said preferred stock issued to Pounds were placed by him in the hands of Swart, trustee, as collateral security or pledge for the payment of a debt of $2,500 owing by Pounds.

On the 18th day of October, 1901, defendant Coburn obtained from Elbert Wheeler, trustee, a sub-lease on said 160 acres of land with privilege of pur-

chasing the original lease on or before six months from the date of said sub-lease, and Coburn took possession on November 1st, 1901, and began mining on said land.

When Pounds and Coburn returned to Joplin from New York, where said written contract was made and signed, Pounds, in compliance with the terms of the agreement on his part, placed in an envelope certificates for fifty shares of said preferred stock, a certificate for three hundred shares of common stock, together with the following order on Swart to deliver to Coburn the fifty shares of stock placed in his hands:

"Joplin, Mo., Oct. 21, 1901.

"To Col. W. D. Swart,

Nashua, New Hampshire.

"Deliver to M. B. Coburn fifty shares of the preferred stock in the Mohaska Zinc Company, standing in my name on the books of said company, now held by you, and I hereby sell, assign and set over to the said M. B. Coburn said fifty shares of preferred stock. Said M. B. Coburn succeeding to any and all rights to which I would be entitled as holder of said stock.

"T. E. POUNDS."

Pounds endorsed on said envelope the following:

"Deliver enclosed papers to M. B. Coburn when he places to credit of T. E. Pounds the following amount: Cash $1,500; $1,000 November 1, 1901; $2,500 December 1, 1901; $1,500 January 1, 1902; $1,500 February 1, 1902.

"Deliver enclosed papers to T. E. Pounds on demand, in case of default of any of the above payments."

Defendant Coburn marked under this endorsement, "O.K., M. B. Coburn," and the sealed package was then deposited with the Joplin National Bank,

to be held and delivered under the terms of the memorandum on the envelope.

Thereafter, in pursuance of said agreement, defendant made several payments to plaintiff, the first payment being on November 23, 1901, and the last on April 21, 1902, the various sums paid amounting in all to but $1,800. Plaintiff made repeated demands on defendant for money payments, and, according to plaintiff's testimony, on December 24, 1901, occurred the following:

"Q. What occurred that time? A. He paid me, I think, $300, and I wanted some more money. I needed the money in other matters, and I pressed him very hard for more money, and he said it was all he could spare that time; that I needn't worry; that if I leave those papers in escrow at the bank, he would pay it all up in a very short time, and I agreed to that and left the papers in there, and they have been there ever since."

Plaintiff also testified that before the papers were placed in escrow he stated and explained to Coburn that the fifty shares of stock assigned to the latter, and for which order was made on Swart in favor of Coburn, were deposited with Swart by plaintiff as collateral security for the payment of his share of a debt of $18,000 owing by the Mohaska Zinc Company, and that his share of such debt was about $2,500.

The defendant denied that plaintiff made such statement to him before the papers were placed in escrow, and testified that at that time he asked plaintiff what the result would be in case Swart would not deliver him the fifty shares, and that plaintiff said "he would have to deliver it." Defendant also denied that on December 24, 1901, or at any other time, he had any conversation with plaintiff in which he told plaintiff that if he would leave the papers in escrow he

(defendant) would pay all the money up in a short time.

There is no evidence that the plaintiff or the defendant ever made any demand at the bank for the delivery of the papers placed there, and, so far as the evidence discloses, the fifty shares of stock placed by plaintiff in the hands of Swart were still in his possession at the time of the trial.

The jury returned a verdict for $6,795.20 in favor of the plaintiff. Judgment was rendered accordingly, and defendant, after filing an ineffectual motion for a new trial, appealed.

Over the objection and exception of defendant, the court instructed the jury as follows:

"1. The court instructs the jury that if you find and believe from the evidence that on the 18th day of October, 1901, the contract of that date introduced in evidence, was signed by the defendant and accepted by him in place of the agreement which was to be entered into between plaintiff and defendant and the Mohaska Zinc Company referred to in a contract between plaintiff and defendant, that thereupon the said sum of fifteen hundred dollars to be paid plaintiff by defendant under said contract between them became due and payable, at the option of the parties thereto; and if you further find and believe from the evidence that defendant did not at that time pay said sum of money or within a reasonable time thereafter, and that he did request the plaintiff to permit the stock and assignment, which had been placed in the Joplin National Bank, to remain therein and that he promised plaintiff if he would do so that he would pay the whole of the money provided for in said contract in a short time and that in consideration thereof the plaintiff agreed to permit said papers to remain in escrow at the request of the defendant, you should find for the plaintiff in the sum of sixty-two hundred dollars and

interest at the rate of six per cent per annum from the 3d day of October, 1902.

"2. The court instructs the jury that even though they may believe that the said plaintiff did not place one hundred shares of stock in escrow, yet if you do believe that before the written contract was entered into between plaintiff and defendant as introduced in evidence, the defendant knew and was informed by the plaintiff the fifty shares of the preferred stock was in the hands of W. D. Swart, and held by him as security for his indebtedness to the company, to the amount of $2,500, and that said defendant examined the stock and assignment placed in escrow, you are instructed that he was not entitled to have delivered to him the fifty shares in the hands of said W. D. Swart.

"3. If the jury believe from the evidence that after the making of the written contract introduced in evidence and after placing the stock and assignment in escrow, the plaintiff and defendant by parol agreement modified the same as to the time of performance by mutual agreement between each other and that the plaintiff performed said contract as so modified, then both parties should be bound by the contract as thus modified.

"4. Even though you may believe from the evidence that Elbert Wheeler and the defendant changed the contract made on October 18, 1901, by a new contract made on April 23, 1902, such change of contract between said parties could not in any way change the obligation of defendant to plaintiff."

The following instructions were given at the instance of the defendant:

"5. You are instructed that the written contract introduced in evidence and marked 'Exhibit B,' being the contract between plaintiff and defendant, dated October 14, 1901, did not bind defendant absolutely to make the payments therein provided and take the

stock therein mentioned, but left it optional with defendant to make all of said payments, or any thereof, and to cease paying when he saw fit, and gave plaintiff the right to withdraw the stock from the Joplin National Bank in case defendant failed to make any payment as specified in said contract, and did not give plaintiff any right to enforce such payments by suit.

"You are further instructed that to constitute a contract between parties they must both agree at the same time to the same thing, that is, the minds of both must concur in the same thing, as evidenced by their acts and declarations. And before you can find for plaintiff you must find and believe from the evidence that after the making of the aforesaid contract, 'Exhibit B,' plaintiff and defendant both intended and agreed to and did change the contract between them evidenced by said 'Exhibit B,' and to contract that plaintiff should and was bound to allow said stock to remain in escrow notwithstanding defendant failed to make the payments at the times provided in said 'Exhibit B,' and that in consideration thereof the defendant should and he was bound absolutely to pay plaintiff the sum called for in said 'Exhibit B.' Unless you so find and believe from the evidence your verdict will be for defendant. The burden of proving the said change in contract, 'Exhibit B,' is on the plaintiff.

"6. Unless you find and believe from the evidence that about December 24, 1901, the defendant had failed to make some payment called for by the option contract marked 'Exhibit B,' and the plaintiff and defendant then agreed in substance that the plaintiff would leave the papers in escrow and waive his right to withdraw same, and that in consideration thereof the defendant would pay the sum called for in 'Exhibit B,' instead of having an option to make such payment as provided in 'Exhibit B,' your verdict will be for the defendant. The burden of proof is on plain-

tiff to show by the greater weight or preponderance of the evidence that said contract, 'Exhibit B,' was so changed by mutual agreement of the parties hereto.

"7.   If you believe from the evidence there was no contract made between plaintiff and defendant after 'Exhibit B,' then your verdict will be for the defendant.

"8.   If you believe from the evidence that when plaintiff deposited the fifty shares of preferred stock and the order was on W. D. Swart in escrow with Joplin National Bank, he stated and represented that said Swart was bound to and would recognize such order, and deliver to defendant on presentation of such order the fifty shares of preferred stock called for therein, and defendant believed said statement and was thereby induced to and did consent to the deposit of said order in lieu of the fifty shares of preferred stock called for therein; and if you further believe from the evidence that said fifty shares were at the time held by said Swart to secure payment of a debt of the plaintiff amounting to about $2,500, and that said debt has never been paid to said Swart and he continues to hold said stock as such security, then your verdict will be for defendant, *unless you believe defendant knew that said shares were so held by Swart as set out in instruction number 2.*"

The words in italics were added to said instruction number 8 by the court; to the action of the court in so modifying the instruction defendant duly excepted.

Defendant challenges instruction number 1, given for plaintiff, upon various grounds; but in our view of the case it is unnecessary to take up and pass upon these points separately, for if, taking the instructions as a whole, they presented the law of the case fairly to the jury, the judgment should not be reversed because of some technical objection to some one or more

of them, unless the subject of objection be of a character such as to prejudice the rights of the defendant.

As shown by the instructions, especially instruction number 1 under consideration, and instruction number 7 given at the instance of the defendant, the main issue presented was, whether or not, after the parties had entered into the written contract and the papers had been deposited in the Joplin National Bank, the defendant promised and agreed to pay the whole of the money provided for in said contract; and that in consideration of such promise the plaintiff agreed to permit the said papers to remain in escrow, and that he did in fact permit said papers to so remain in escrow in said bank.

Plaintiff demanded payment of the balance due on the contract on the third day of October, 1902, at which time it appears there was a balance due him of $6,200, with interest at the rate of six per cent per annum from the time of said demand, but no part of said sum was paid. The evidence of both plaintiff and defendant was to the effect that the papers did remain in escrow, by permission of the plaintiff, and were in escrow at the time of the institution of the suit.

Instruction number 2, which is objected to by defendant, simply goes to the defendant's knowledge of the fact that the fifty shares of preferred stock were in the hands of W. D. Swart, and whether, with full knowledge of such fact, defendant made an absolute purchase of said stock. This was one of the issues presented by defendant's answer, and there was sufficient evidence to justify its submission to the jury.

The objections to instruction number 3 are extremely technical, and seemingly without merit. This instruction properly submitted to the jury for their determination the question whether a parol agree-

ment between plaintiff and defendant was made after the papers were placed in the Joplin National Bank, in escrow, and whether plaintiff performed his part of the contract as so modified.

Instructions 5, 6 and 7, given at the instance of the defendant, indicate the theory of the defense, and these instructions, taken and considered in connection with the other instructions given, presented the case very fairly to the jury. There was, therefore, no error in refusing to give instruction number 8 as asked by defendant, or in giving it as modified.

The evidence was sufficient to justify the finding by the jury that the defendant knew that the fifty shares of stock in question was pledged to Swart to secure the payment by plaintiff of a debt of $2,500, and that defendant agreed to accept the order on Swart in lieu of a deposit of said fifty shares of stock, and to take such shares subject to such lien. In fact the order itself indicates that the stock for which it calls, while standing in Pound's name on the books of the company, was held by Swart as security, or that Swart had some interest therein, the order reciting, "Said Coburn succeeding to any and all rights to which I [Pounds] would be entitled as holder of said stock." Besides, the testimony of Pounds tends to show that defendant knew said stock was pledged when he entered into the contract of purchase.

The court did not err in telling the jury in instruction number 1, given for plaintiff, that if they found for plaintiff they should find for him in the sum of sixty-two hundred dollars, and interest at the rate of six per cent per annum from the 3d day of October, 1902. The parties, by express agreement, fixed the price defendant was to pay for the property, and the measure of damages, therefore, was the sum due under the contract, together with interest at the rate of six

per cent per annum from the time such sum became due and payable.  [Sec. 3705, R. S. 1899.]

Finding no reversible error in the record, the judgment is affirmed.  All concur.