EVALYN MILLIRONS, Respondent, v. THE MISSOURI & KANSAS INTERURBAN RAILWAY COMPANY, a Corporation, Appellant.

Kansas City Court of Appeals, January 19, 1914.

1. NEGLIGENCE: Damages: Personal Injuries: Causal Connection Between Negligent Act and Injury. While plaintiff was a passenger on defendant's car a collision occurred with another car on defendant's road. Plaintiff was hurled against

the top of the back of the seat with such force as to either break the seat or tear it loose from its fastenings. Her body struck just over the left ovary. From that time she suffered pain in the region of her ovary constantly, though free from it prior to that time. A medical examination disclosed a lump in the region of the ovary and an operation was performed to remove it and the ovary was found to be diseased. There was testimony from her physicians that such an injury could have been produced by such a blow. *Held*, that a causal connection between injury and collision was shown, at least sufficiently to take the case to the jury.

2. ————: ————: ————. In a suit for personal injuries, the rule is that if the injury may have resulted from one of two causes, for one of which and not the other, defendant is liable, plaintiff must show with reasonable certainty that the cause for which defendant is liable produced the result, or fail in her case. But before defendant is entitled to invoke this rule, the evidence must show that more than one cause was present. Unless this is done it has not been shown that the injury may have resulted from more than one cause. Neither side will be allowed to indulge in conjecture.

3. **TRIAL PRACTICE: Hypothetical Questions: Questions not Hypothetical.** A question may be asked an expert who is acquainted with plaintiff's alleged physical condition as to whether or not in his opinion such condition could have been caused by the accident for which suit is brought. Such question is not a hypothetical question but merely a question put to an expert.

4. ————: ————. If such question becomes hypothetical on account of the form in which it is put, still, if the witness speaks of his own knowledge as to the plaintiff's condition, and there is evidence of only one accident alleged to have caused the trouble, such question need not contain all the circumstances surrounding the alleged collision since that was not disputed. The question and answer will be intelligible and the latter will be of probative force even if all the *minutiae* of the collision are not included.

5. ————: ————: **Omitting Necessary Elements: Objection Must Point Out Omission.** If a hypothetical question is objectionable because it omits one or more necessary elements, an objection thereto, to be effective, must point out the supposed error, imperfection or omission, with sufficient certainty to reasonably call the trial court's attention to the defect. Otherwise the overruling of the objection will not be error.

6. ————: ————: **Asking Expert for his Conclusion and not his Opinion: Invading Province of Jury.** It is improper to

ask an expert whether or not an alleged act caused plaintiff's diseased condition, since that is the question for the jury to answer. And if the evidence discloses the existence and operation upon plaintiff of other causes than the one alleged and complained of, and for which other causes defendant is not liable, it is perhaps improper to ask plaintiff's expert if the diseased condition was caused by the other causes, since the effect of such course is, by a process of elimination, to say that the cause alleged to have produced it did in fact produce it. But since there was no evidence of the existence and operation of any other causes in this case than the one alleged and for which defendant would be liable, the asking of such a question as to two of such possible, but nonexistent, causes, is not reversible error. As there was no evidence of such other causes being present, but affirmative evidence that they were not, the jury could not fail to understand the answer, and the question, therefore, was not prejudicial.

7. INSTRUCTIONS: Patent and Harmless Verbal Inaccuracy. Even if an instruction contained the word "conclusion" it is not rendered meaningless when the context shows plainly that the word was intended to be "collision." A judgment must not be disturbed on account of such a patent and harmless verbal inaccuracy.

Appeal from Jackson Circuit Court.—*Hon. O. H. Hill,* Special Judge.

AFFIRMED.

*M. E. Casey, Jas. T. Taylor* and *E. H. Wright* for appellant.

*John C. Nipp* and *John L. Wheeler* for respondent.

TRIMBLE, J.—While plaintiff was a passenger on one of defendant's interurban cars going from Kansas City to Olathe, a head-on collision occurred with another of defendant's cars coming from the opposite direction. An instant before the collision, plaintiff, seeing what was about to happen, involuntarily rose in her seat, and the force of the collision threw her violently forward and then backwards against the top part of the seat she had been occupying. The back of the

seat was torn loose. She struck the top of the back of the seat on her left side over the region of the left ovary. The injuries alleged to have been sustained consisted of a cut and bruise on the knee-cap and an injury to her left ovary which resulted in an operation to remove it.

She was undoubtedly a passenger when the collision occurred. The only question of fact in dispute is whether or not the collision caused the condition of her ovary which necessitated its removal. As the injury to the knee was temporary and soon healed, the alleged injury to the ovary became the important and, perhaps only, subject of the contest. Defendant claims the evidence fails to show that the diseased condition of the aforesaid female organ was caused by the collision.

If there is any substantial evidence showing a causal connection between the collision and the affected ovary, we cannot disturb the judgment on the objection made, since the jury, by its verdict, has found that the collision caused the injury to said organ. The jury returned a verdict for $1000 and this sum is entirely too large to have been given for the slight injury to the knee alone.

Defendant does not dispute the proposition that, if there is any substantial evidence to support the verdict, it must stand, so far as the above objection is concerned. Its contention is that a diseased ovary is produced by a number of causes entirely independent of an accident or negligent injury, among such causes being miscarriage, abortion and infection from an imperfectly discharged placenta in childbirth and venereal diseases; that these are the ordinary and frequent causes; that owing to the deep seated location of the ovaries and their protection by the pelvic bones, it is impossible for a blow, such as plaintiff says she re-

ceived, to have injured the ovary without producing an outside mangling or laceration, which was not present in this case. Defendant, therefore, invoked the principle stated in Warner v. Railroad, 178 Mo. 125, l. c. 134, viz.:. "If the injury may have resulted from one of two causes, for one of which and not the other, the defendant is liable, the plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the result, and if the evidence leaves it to conjecture, the plaintiff must fail in the action." The principle is undoubtedly correct. But can it be applied to the evidence in this case? As we view it, before this principle can be successfully invoked in any case, the evidence must show the *existence in plaintiff of more than one possible cause.* Defendant, upon mere proof that it is possible to produce a given injury by other causes than the one alleged, cannot indulge in the conjecture that such other causes *may* have existed, and, upon this bare surmise, base an application of the principle. He can no more indulge in conjecture as to the *existence* of the other causes, *before* they are shown to have been present, than the plaintiff can indulge in guesswork as to which was the real and efficient cause, *after* more than one possible cause has been shown to exist. In other words, before defendant can claim the benefit of the above principle, the evidence must show, not only that it is possible to produce the result by other causes, but also that other causes were *present* in the particular case. For instance, defendant shows that a diseased ovary is frequently caused by abortion, miscarriage, and infection either from a venereal disease or from an imperfectly discharged placenta in childbirth. But there is no evidence anywhere, either express or implied, that the plaintiff ever had an abortion, miscarriage or any other of the infections named. And until there is some evidence that one or more of such

things *existed* with reference to plaintiff, the defendant is not in position to invoke the principle above stated. In the case of Smart v. Kansas City, 91 Mo. App. 586, cited in support of the principle, the evidence showed that the injured leg had been infected with tuberculosis prior to the injury alleged against the city, consequently the amputation claimed to have been made necessary by the negligent injury may have been caused by the tuberculosis and not by the city's neg-ligence. Certainly the court would not have held there was more than one cause for the amputation *if no tuberculosis in the plaintiff had been shown.* In Young v. Railway, 113 Mo. App. 636, another case announcing the principle invoked by defendant, the evidence showed that the plaintiff suffered with rupture before the accident and that his other injury was attributable to rheumatism from which he had suffered for years. Plaintiff did not say positively the alleged negligence in that case augmented the rupture, and as there was evidence that the rupture was *in existence* at the time of the accident and that on the day before he pitched wheat in a way that might have augmented it, it was a matter of conjecture whether the accident or the pitching of the wheat augmented the rupture. Certainly, if the plaintiff had not been shown to have suffered with rupture and to have pitched hay in a way to aggravate it, and had sworn positively that the negligent injury increased it, the court would not have held that the cause of the increase was left to conjecture. In another case, Caudle v. Kirkbridge, 117 Mo. App. 412, the evidence showed, not merely that it was possible for an explosion to be caused in several ways, but also that the various different causes *were present* and could have operated to produce it. In that case also plaintiff did not know what caused it and there was nothing to show with any more reasonable certainty that the alleged defective tool caused it than

the other causes shown to have been present. In Shore v. Bridge Co., 111 Mo. App. 278, the defendant attempted to attribute the fall of the plaintiff workman to causes other than the one alleged, but as there was *no evidence of such other causes being present,* the court would not give ear to the suggestion. On page 287, Judge JOHNSON, who wrote the opinion, said: "To attribute the fall to any other cause (than the one alleged) would be the result of mere conjecture and speculation." And on the next page, he said: "Conjecture is not permissible in aid of either party." In other words, defendant cannot, by conjecture, supply other causes, in the absence of any proof of their presence, any more than plaintiff can indulge in conjecture as to what caused the injury when more than one cause is shown to have been present. As there was no evidence showing that plaintiff, in the case before us, had ever been subject to any of the other possible causes, we do not think the principle invoked by defendant is applicable.

But it is contended that plaintiff's evidence does not show that the collision caused the injury to the ovary. It is shown that when the collision occurred plaintiff was hurled with such force against the back of the car seat as to tear it from its place and break it. Her body struck the top of the back on the unprotected part of her body just over the left ovary. Before that she had been healthy and suffered no pain or trouble of any kind. After that she did, until some weeks later she was compelled to submit to an examination of the affected part, and a lump was found which could only be removed by an operation which was performed still later, and the diseased ovary removed. Three physicians testified that in their opinion she could have received such an injury to the ovary in the manner above described and that, too, without leaving an external laceration or without breaking **any**

bones. One of them gave a very plausible explanation of how such a blow could produce such a result, that is, that the bruise or strain could bring about an inflammation which would cause the Fallopian tube and ovary to become infected thus necessitating the removal thereof. This, however, was stricken out by the trial court, evidently upon the theory that it was a statement of what *did* happen rather than the doctor's opinion as to what *could* have happened. Other physicians testified, for the defendant, that in their opinion an ovary could not be injured or affected the way plaintiff's was by a blow such as she was shown to have received. It was for the jury to say which side was correct in its opinion, and whether she was thus injured. The blow in that region being shown, and it being of sufficient force to break the seat, the woman not being affected in any way prior to that time, and commencing and continuing to suffer from that time, and there being evidence that the injury could have resulted in that way, and no evidence that any other cause was actually present to produce it, and that only the ovary on that side was affected, we think there was a sufficient basis upon which the jury could be allowed to say whether or not the blow did produce it. As said by JOHNSON, J., in Shore v. Bridge Co., 111 Mo. App. 278, l. c. 288, "It is true, the burden is upon plaintiff to show the existence of the negligent act and injury directly resulting therefrom and mere proof of negligence and injury is not sufficient without evidence tending to establish a connection between them. But when facts and circumstances are shown from which with reasonable certainty the existence of such elemental fact may be inferred, the burden of proof is sustained."

The next assignment of error is that improper hypothetical questions were propounded by plaintiff to her physicians. A number of questions, which defend-

ant terms hypothetical, were objected to and the objections overruled. This requires an examination of them in detail.

One of the plaintiff's medical experts had been her physician, and had examined and treated her the day after the collision. It occurred August 21, 1910, and he continued to examine her and treat her down to December, 1910, when the operation was performed. Another physician and surgeon, who was called into consultation and examined her and performed the operation, also testified in her behalf. The objections to the questions propounded to these two experts may be considered together. In doing so it is well to bear in mind that these two experts were testifying *directly from their own knowledge* as to the condition the ovary was in, one of them as to its condition from the day after the collision down to the time of the operation and afterward, and the other for a short time prior to and at the operation. Consequently their knowledge of the condition of the injured part was derived from their own observation, and, therefore, questions put to them did not have to include facts bearing on the state of the affected part in order for them to testify. To this extent, at least, the questions propounded were not strictly hypothetical questions. They were merely questions put to an expert as to whether or not, in their opinion, such a condition could have resulted from the striking of plaintiff's body against the top of the seat in a collision. In this respect it is similar to the question objected to in Holloway v. Kansas City, 184 Mo. 19, 1. c. 40, where the question was, "Could plaintiff's physical condition have been caused by a fall or a shock?" and the objection was that the question did not include the facts in evidence. The Supreme Court said the question was not a hypothetical one and was proper. The plaintiff, in the case before us, at first attempted to propound her question in the above form, . .

but, on objection being made by defendant and sustained, plaintiff finally incorporated into her question certain assumptions of facts, which were in evidence, as to the striking of plaintiff's body against the seat. This may have changed it into a hypothetical question, and we will, therefore, consider it on the theory that it was such.

The question propounded to plaintiff's first expert, Dr. Lilly, in the form in which it was when finally answered, was: "Assuming that the plaintiff, while riding in one of defendant's cars, on the afternoon of August 21, 1910, was thrown, while in a standing position, against the back of one of the seats, which struck her externally over these organs on the left side, tell the jury now whether or not, in your judgment as a physician and surgeon, the condition in which you found these organs at the time of their removal, could have been produced by striking the back of that seat— if she suffered pain in that location immediately after she was struck and suffered pain up until the time of the operation?" If it be conceded that this question is a hypothetical one on account of its form, and for that reason cannot come within the characterization made in the Holloway case, supra, still it would seem to embrace enough of the facts as to the nature of the blow, to enable the doctor to give an intelligent opinion and the jury to judge of its value. There was but one blow to the body over the affected part. That occurred in a collision between two travelling interurban cars in which plaintiff, while in a standing position— having arisen in her alarm—was thrown against the top of the back of the car seat so violently as to break the back off. There was no doubt but what this happened, except that there was testimony on defendant's part tending to show the seats, which were fastened to the floor with six screws in each leg, were pulled loose instead of being broken, which would make no

difference so far as the force of the impact of plaintiff's body against the seatback is concerned. So that when the doctor was asked whether or not in his opinion the condition he found could have been caused by the plaintiff being thrown, while standing, against the top of the seat back, certainly this was sufficiently definite and applicable to the facts to enable the jury to reach an intelligent conclusion thereon as much so as it would have been had numberless other minutiae surrounding the collision been included. It is not like a question as to within what distance or time a car, or train of cars, in motion, can be stopped. For in such question the answer cannot be an intelligible one unless many facts, directly and vitally affecting the worth of the answer, be included, namely, the speed and weight of the car, its appliances for stopping, the condition of the track and other things. But what other minutiae surrounding the collision and plaintiff's fall against the seat would be necessary to make the doctor's answer intelligible or of probative force? It was not necessary to include statements of assumed symptoms of plaintiff because the doctor knew what they were and testified to them. It would seem, therefore, that the trial court did not err in overruling the objection to the question.

There is another reason why the court's action in allowing the question to be asked was not error, and that is because the objection thereto fails to specifically point out the supposed error, or omission, or imperfection, in the hypothetical question. In the recent case of Burton v. Railway, 176 Mo. App. 14, we had occasion to consider the sufficiency of an objection which thus fails to point out the omission in such a question. In that case, in an opinion by ELLISON, P. J., it was held that such an objection is not sufficient unless it does point out the imperfection with reasonable certainty, and the ruling on this point has been em-

phasized and amplified in an opinion on the motion to transfer to the Supreme Court filed in said case.

In the case now before us, the objection to the question hereinbefore set out was as follows:

"The defendant objects, first because it is leading and suggestive; second, because it is speculative, not a proper hypothetical question and no ground has been laid for a hypothetical question—and objects further on the ground that this question is not changed in any particular from the prior question, which the court has already ruled upon." The objection to the prior question here referred to was that the question was leading, "not a proper hypothetical question and does not include all the circumstances in this case." Thereupon plaintiff's attorney inquired, "What do you want included in this question?" No answer was given to this inquiry but the inquiry itself was objected to. Thereupon the court, on its own motion, suggested one improper element in the question whereupon the plaintiff's attorney accepted the court's suggestion and reforming his question, asked it substantially as hereinabove shown. If the question, as asked, should have included other elements, we do not think the objection made to it was sufficient to call the court attention to its imperfection, and therefore, it was not error to overrule the objection.

The question asked plaintiff's next medical expert, Dr. Thomas, who was and had been her physician, is as follows: "I will ask you, Doctor, if in your judgment as a physician and surgeon, the condition you found her ovary in, when you first treated her, after the twenty-first day of August, nineteen hundred and ten, could have been caused by falling or being thrown against a seat of a car on the Strang Line in a collision between the two cars, going in the opposite direction." This question was objected to on the ground that it did "not cover all the details of the so-called accident."

Millirons v. Railroad.

We do not think this question was a hypothetical question, but was simply a question put to an expert (who was thoroughly familiar with the condition of the plaintiff and the affected organ), as to whether or not an alleged cause could have produced that condition. In other words, it was the same question the Supreme Court in the Holloway case, supra, said was not a hypothetical question. The phrase "details of the so-called accident" in the objection did not refer to the symptoms manifested by the affected part nor to plaintiff's condition immediately after the collision (the absence of broken bones, external laceration or bruise, plaintiff's ability to walk thereafter, etc.), but only to the circumstances showing the character of the collision. It was not necessary to include in the question a detailed statement of plaintiff's symptoms and condition because that had already been detailed in evidence before the jury, and this doctor, who was testifying, had personally seen, examined and treated plaintiff from the day following the collision, and knew her condition. Of course, if he had been attempting to testify as to what could have caused a condition of which he did not personally know, the question should have contained a description of her assumed condition and prior health, and of the symptoms claimed to have been manifested by her immediately after the collision, and at the time of the operation.

Defendant's experts testified that in their opinion it was impossible for a woman to receive an injury to her ovary by being thrown against a car seat without breaking some of the pelvic bones or producing an external laceration or bruise; that while it was possible to conceive of such a thing, they had never seen a case of that kind.

In rebuttal of this testimony plaintiff placed Dr. Croskey on the stand, and asked his opinion as to whether plaintiff could have received an injury to her ovary in that way. This witness had never examined

the plaintiff and could not testify from his own knowledge of her condition. The question put to him, therefore, had to include the elements of her condition before and after the injury and at the time of the operation. We think it did, and if any were omitted, the objection to the question did not point them out with sufficient particularity. The question as finally answered was, in substance, this: Tell us whether or not, in your judgment as a physician and surgeon, a woman, the size of this plaintiff, who, while standing in the aisle of one of the Strang line cars when it came in collision with a car going in the opposite direction, was thrown against a car seat and struck her body over the ovary and Fallopian tube against this seat, but there was no external laceration or bruise, could such a woman have thus received to her left ovary injuries of such a nature as would necessitate the removal of the ovary, taking into consideration the fact that previous to the accident she was in good health physically and had no trouble in these parts, but after this collision, which occurred on August 21, 1910, immediately she suffered pain more or less up until December 14, 1910, when the operation was performed, and the ovary was found to contain pus? The objection to this question was: "It is not a hypothetical question." This was not sufficient to render the admission of the question reversible error. If it omitted any necessary elements they should have been pointed out with sufficient particularity, at least, to enable the trial court to be advised of the defect objected to.

This disposes of all the questions of which complaint is made except one asked Dr. Lilly by plaintiff on redirect examination, after he had been cross-examined by defendant as to what other causes may produce disease in an ovary. He testified, that it was frequently caused, and was more readily caused, by

the things hereinbefore stated, abortion, miscarriage, infection through the vagina, etc., than by an external blow; that the reason he said it was more readily caused by the former was because they were so frequent, while a blow over the ovary was infrequent. Plaintiff then asked him this question: "Doctor, assuming that this plaintiff received an external blow over these organs on the twenty-first day of August, nineteen hundred and ten, and thereafter she suffered pain until the time of the operation, now from the present state and examination you made, and the condition you found at the time of the operation, you may tell the jury whether or not in your opinion as a physician and surgeon this condition was produced by a miscarriage?" To this question an objection was made that, "no ground or foundation has been laid for the question—it is not a proper hypothetical question and does not contain all the elements in this case and calls for an improper conclusion of the witness." A similar question was asked as to abortion, and the objection was that it "calls for an improper conclusion of the witness."

It will be noticed that the question did not say "*could* this condition have been produced by miscarriage?" but "*was* it produced by miscarriage?" If the question had been thus asked concerning the cause alleged by plaintiff in her petition, clearly it would have been improper, since it would have invaded the province of the jury, the only body having power to say what *did* cause it. But defendant says it was shown that various things, for which defendant is not liable, can produce a diseased ovary and that its witnesses were claiming that it was impossible for an external blow to cause it, and that, under these circumstances, it was error for plaintiff's witness to say that miscarriage and abortion did *not* cause it, since, by a process of elimination, this was the same as saying

the external blow did cause it. If there had been any evidence that plaintiff had ever suffered from miscarriage or abortion, this contention would doubtless be good. But, not only was there no evidence that plaintiff had ever suffered such ills, but there was affirmative evidence that she had not had them. And it was only because defendant insisted that miscarriage or abortion caused the trouble, without any evidence showing that either of these ills existed, that plaintiff asked her physician if miscarriage or abortion produced her trouble. In view of the absence of any evidence showing that plaintiff had ever had a miscarriage or abortion, it is not seen how the asking of the above question could have prejudiced the defendant before the jury. The witness had admitted on cross-examination that abortion or miscarriage *could* produce a diseased ovary, that is, it was possible for it to do so, and, when existent, would frequently do so. But there was no evidence that it had ever existed in this woman. And, of course, the diseased ovary was not caused by miscarriage if no miscarriage had ever occurred. Consequently the jury could not fail to understand that the answer to the question was really a statement that in the doctor's opinion the diseased ovary was not caused by miscarriage or abortion because the woman had never had either. In its last analysis, and as it would be understood, this was the statement of a conclusion that no such ill had ever befallen the plaintiff. And while it might tend, so far as it went, to invade the province of the jury, by way of eliminating miscarriage or abortion from the list of possible causes, still, in view of the fact that there was no evidence that she had ever suffered a thing of this kind but on the contrary there was other evidence that she had not, we do not think the asking of the above question constitutes reversible error. [Sec. 2082, R. S. Mo. 1909.]

Complaint is made of plaintiff's instructions 2, 3 and 4. We have examined them carefully. The first two do not assume that plaintiff was injured by the collision, because the first contains this clause "provided you further believe from the evidence that as the result of the collision, if any, of defendant's cars at the time and place in controversy she received any or all of the injuries mentioned in the evidence," and the second contains the provisional statement that "if you find and believe from the evidence that . . . said car collided with another . . . and injured plaintiff, etc." The instruction No. 4 was not meaningless since the last word therein could only be "collision" and not "conclusion." Even if the word was actually written "conclusion" instead of "collision," the context showed clearly that "collision" was the word intended, and the jury could not have understood otherwise. When such is the case the judgment should not be disturbed for such a patent and harmless verbal inaccuracy. [Pounds v. Coburn, 210 Mo. 115; Shortel v. City of St. Joseph, 104 Mo. 115, l. c. 121.]

There being no reversible error.in the record we are not warranted in disturbing the judgment. There was sufficient evidence to take the case to the jury. Under our system it is the arbiter of the facts. We must accept their finding. Judgment affirmed. All concur.