CHARLES A. EDLING, Respondent, v. KANSAS CITY BASEBALL & EXHIBITION COMPANY, a Corporation, Appellant.

Kansas City Court of Appeals, June 1, 1914.

1. **NEGLIGENCE: Baseball: Personal Injuries.** The plaintiff was injured while witnessing a game of professional baseball at the defendant's baseball park, and sued to recover damages therefor. A foul ball came through the wire netting in the protected part of the grand stand, striking the plaintiff, who was sitting therein, breaking his nose. *Held*, that the demurrer to the evidence was properly overruled and considering the injuries of plaintiff a verdict for $3500 was not excessive.

2. ———: ———: **Grand Stands: Natural Risks.** One of the natural risks encountered by spectators of a profession baseball game is that of being struck by a foul ball, and the owner of a baseball park is not required by law and does not undertake to insure the patrons of the screened-in portions of a grand stand immunity against injury from such source, but being in. the business of providing a public entertainment for

Edling v. Exhibition Co.

profit, he is bound to exercise care to protect his patrons against injuries.

3. **EVIDENCE: Medical Books: Witnesses.** A counsel in a cause is not allowed to read to a jury from the writing of standard medical authors, first. because such evidence is not delivered under oath; second, there is no opportunity of cross-examining the author; third, medicine is not . an exact science, doctors disagree and medical theories are subject to frequent modifications and change. ' But counsel is allowed to read from a medical book for the purpose of framing questions propounded to an expert witness under oath.

4. **WITNESSES: Expert Evidence.** A witness cannot be allowed to testify as to whether the blow on the nose did or did not cause the disease, because he would be deciding an important issue which was for the jury to determine.

Appeal from Jackson Circuit Court.—*Hon. Jos. A. Guthrie,* Judge.

AFFIRMED.

*Hadley, Cooper & Neel* for appellant.

(1) The court erred in overruling the defendants' objection to the question asked the witness, Doctor Manko, as follows: "Q. Now, where the bone in the nose is involved in the part where you have spoken of the bone of the nose itself, what is necessary to do when polipi are taken out? Russ v. Railway Co., 112 Mo. 48; Benjamin v. St. Ry. Co., 50 Mo. App. 610. (2) The court erred in overruling defendants' objection to counsel for the plaintiff reading to the jury from a medical book. 17 Cyc. p. 270; Bloomington v. Schrock, 110 Ill. 219, 51 Am. Rep. 679; State v. Peterson, 110 Ia. 647; 82 N. W. 329; Davis v. State, 38 Md. 15; Com. v. Brown, 121 Mass. 69; Com. v. Sturtivant, 117 Mass. 122, 19 Am. Rep. 401; Fox v. Pew. W. L. Works, 84 Mich. 681; Hall v. Murdock, 114 Mich. 239. (3) The court erred in sustaining the objection of plaintiff's counsel to the question asked by defendants' counsel of the expert witness, Doctor Trueman. Millirons v. Railway Co., 162 S. W. 1072.

*Brewster, Kelly, Brewster & Buchholz* for respondent.

JOHNSON, J.—Plaintiff was injured while witnessing a game of professional baseball in Kansas City and sued defendant, the owner of the ball park, to recover damages resulting from the injury, which he alleges was caused by negligence of defendant. In addition to a general denial the answer pleads defenses of assumed risk and contributory negligence. Verdict and judgment were for plaintiff in the sum of $3500 and the cause is before us on the appeal of defendant.

The injury occurred May 31, 1911, during the progress of a game between the "Kansas City Blues," the club owned by defendant and another club of the "American Association." The exhibition was public and plaintiff had paid the regular fee of fifty cents charged by defendant for a seat in the grandstand and had seated himself in that part behind the catcher's box and which was screened in with chicken netting to protect its occupants from being struck by foul balls. The evidence of plaintiff tends to show that a foul ball passed through a large hole that had been worn in the netting and struck plaintiff in the face, breaking his nose. The negligence alleged in the petition is:

"That the defendants negligently and carelessly permitted the screening on said grandstand to be and become old, rotten, worn and defective and negligently and carelessly permitted holes large enough to permit the passage of a baseball to be and remain in said screening in said grandstand; that the defendants knew of said old, worn, rotten and dangerous condition of said screening and of said holes in said screening, or by the exercise of ordinary care could have known of same long prior to the accident to plaintiff hereinafter complained of, and in time, by the exercise of ordinary care to have repaired the same prior to said accident

. . . that while he was sitting in said grandstand as aforesaid, a foul ball was batted by one of the players participating in said game; that said ball went through said old, worn and defective screening, as aforesaid, and through one of the holes heretofore described, and into the grandstand, striking plaintiff in the face with great force and violence, thus and thereby, then and there giving to plaintiff the following painful, permanent and dangerous injuries, to-wit:'' etc.

Plaintiff states he was watching the game but had lost sight of the ball after it was struck by the batter and did not know what had become of it until it struck him. The grandstand was extensive, capable of seating 6000 or 7000 spectators, and seats in it were not reserved. The ticket he purchased gave plaintiff the right to select any seat that was not already appropriated by some other spectator earlier to arrive. On his arrival he found the grandstand well filled but with unoccupied seats in every section. He chose a seat about half way back and almost on a line with the pitchers' and catchers' boxes, in order that he might see the pitcher ''curve the ball.'' About 700 balls are pitched during a game and in the preliminary practice of the two clubs, and an average of ten per cent of such balls are fouled by the batters in every possible direction. Many of these ''fouls'' fly directly back of the catcher and some are projected with great force and speed. Officers and employees of defendant testified that the screens were maintained for the protection of the spectators; that these screens were new and in perfect condition and that it was the custom of defendant to have them inspected daily and repaired if found defective. On the other hand the evidence of plaintiff tends to show that the ball which struck him passed through a hole almost a square foot in area, that there were many holes of various sizes and through which a ball could pass, scattered over the screening, and the inference from all of the evidence of plaintiff

is very strong that the screening was old, worn and rotten and had not been repaired in either that or the preceding season.

In the consideration of the demurrer to the evidence which defendant argues should have been given, we accept the evidence of plaintiff, since it appears reasonable, and reject the assertion of defendant's witnesses that the screen was new and in perfect condition. We must also ignore the suggestion that since screening had to be provided which would not greatly interfere with the envisagement of the field by the spectator behind it, such screening necessarily lacked sufficient strength to turn the most forcible of the foul balls and, consequently, that the injury should be attributed to a risk not avoidable by the exercise of reasonable care. The evidence supports the opposite conclusion which we must adopt, that chicken netting in good repair and of the mesh used by defendant, would stop all batted balls and that the ball in controversy did not force its way through a sound screen, but passed through an old hole which any sort of diligence and care would have discovered and repaired.

One of the natural risks encountered by spectators of a professional baseball game is that of being struck by a fouled ball, and it goes without saying that defendant was not required by law and did not undertake to insure the patrons of the screened-in portions of its grandstand immunity against injury from such source, but being in the business of providing a public entertainment for profit, defendant was bound to exercise reasonable care to protect its patrons against such injuries. [King v. Ringling, 145 Mo. App. 285; Murrell v. Smith, 152 Mo. App. 95; Crane v. Exhibition Co., 168 Mo. App. 304.] As we observed in the case last cited, which was a suit against the present defendant for an injury sustained by a patron who seated himself in the grandstand outside of the screened-in part, "the facts that the general public is invited to

attend these games, that hard balls are thrown and batted with great force and swiftness, and that such balls often go in the direction of the spectators, we think the duty of defendants towards their patrons included that of providing seats protected by screening from wildly thrown or foul balls for the use of patrons who desired such protection.'' ⌋

Defendant recognized this duty by screening that part of the grandstand most exposed to the battery of foul balls and impliedly assured spectators who paid for admission to the grandstand that seats behind the screen were reasonably protected. None of those seats was closed to patrons and when plaintiff entered the grandstand he was invited to seat himself where he pleased with the assurance that reasonable care had been observed for his protection. It was the duty of defendant to exercise reasonable care to keep the screen free from defects and if it allowed it to become old, rotten and perforated with holes larger than a ball, the jury were entitled to infer that it did not properly perform that duty, but was guilty of negligence.

In seating himself where he did plaintiff did not assume the risks resulting from such negligence. The courts of this State have always adhered to the doctrine—of the justice of which there can be no reasonable question—that where one person owes a duty to another, the person for whose protection the duty exists cannot be held to have assumed risks of injury created solely by a negligent breach of such duty. The facts and circumstances disclosed by the evidence of plaintiff would not warrant us in declaring, as a matter of law, that his injury was caused by an ordinary and usual risk assumed by invitees at such public exhibitions.

Nor do we sanction the contention that plaintiff was guilty in law of contributory negligence in seating himself at a place where a batted ball might pass

through a defective opening in the screen and hit him. Plaintiff states he had not observed that the netting was defective and we cannot say that he was indisputably negligent in not inspecting the netting and selecting a seat that would not be in line with one of the holes. He was entitled to place some reliance on the implied assurance of his host that all of the seats in the grandstand were reasonably safe, and was not compelled by the requirements of reasonable care to leave the seat he had chosen until he discovered or should have discovered that it was in the path of danger. It was for the jury to decide whether or not he was acting with reasonable care in selecting a seat and in remaining in it as long as he did.

It is suggested that he was negligent in not attempting to catch or dodge the ball. His explanation that he was watching the game but failed to see the course the ball had taken from the bat is reasonable and natural. The uncertainty in the direction, speed and force of a batted ball is one of the interesting and often exciting features of the game and frequently it is difficult for even the trained eye to follow the course of the ball. The issue of whether plaintiff was reasonably attentive was an issue of fact to go to the jury. The demurrer to the evidence was properly overruled.

The court did not err in admitting evidence tending to show that the netting had been allowed to remain in a defective condition during that and the preceding season and that foul balls had passed through the defective places into the grandstand. Such evidence had a bearing on the issue that a defective screen was maintained for such a length of time that defendant had notice of the defects and should have repaired them.

Objection is offered to the following cross-examination by counsel for plaintiff of one of defendant's medical witnesses:

"Q. Let me ask you, Doctor, if it is not a fact that what traumatic anesthesia of the retina means is an injury to the retina that cannot be seen on examination, but can simply be determined by visual disturbance? A. No, sir; not strictly, because you may have a traumatic anesthesia with a rupture of the globe.

"Q. Who is this author Schweinitz—is that a De in front of it? A. Yes, sir.

"Q. Did you ever hear of him? A. Yes, sir.

"Q. Is he recognized as a standard author on the eye? A. Yes, sir.

"Q. Doctor, let me ask you if this is true—who is Leeper? A. He is an authority.

"Q. A great German authority? A. Not great.

"Q. A standard author? A. A standard man.

"Q. Is this true, 'Traumatic anesthesia of the retina is a name proposed by Leeper to describe the effect of a blow upon the eye without discoverable opthalmoscopic changes, but with considerable effect—'

"Mr. Neel: If your Honor please, I wish to object to Mr. Brewster reading from a book, if he wants to ask any questions, I have no objection.

"The Court: Go ahead, I will permit it.

(To which ruling and action of the court the defendant then and there duly excepted and still excepts.)

"Q. (Continuing) 'But with considerable defect in vision and contraction of the visual field,' and the results—'Moreover it may remain unchanged for a long time or indeed never entirely pass away.' Do you agree with that statement? A. Yes, sir; partially."

The rule is invoked that it is improper to read to the jury from a medical book since "the jury may confuse the unsworn statements read from the book with the sworn testimony in the case and think that what was read from the book was testified by some witness and be confused with testimony in the case at bar,"

citing 17 Cyc. 270; Bloomington v. Schrock, 110 Ill. 219; State v. Peterson, 110 Ia. 647; David v. State, 38 Md. 15; Commonwealth v. Brown, 121 Mass. 69; Commonwealth v. Sturtivant, 117 Mass. 122; Fox v. Peninsular, etc. Work, 84 Mich. 676; Hall v. Murdoch, 114 Mich. 233.

Counsel for plaintiff did not read from the book as independent evidence but for the purpose of framing questions propounded to an expert witness who was under oath. The grounds on which the rule excluding the writings of standard authors is founded are ''first, such evidence is not delivered under oath; second, there is no chance of cross-examining the author; third, medicine is not an exact science, doctors disagree, and medical theories are subject to frequent modification and change.'' [Railroad v. Yates, 79 Fed. 1. c. 587.] The instant examination is not subject to any of these objections and as is said by the Supreme Court in MacDonald v. Railroad, 219 Mo. 1. c. 492: ''We see no reason why counsel could not frame a proposition in medical science in the exact language of the author and ask the witness whether he agreed to it.'' [See also Tomkins v. West, 55 Conn. 478; Insurance Co. v. Ellis, 89 Ill. 516.]

Error is claimed in the ruling of the court sustaining the objection of plaintiff to the following question asked an expert witness by counsel for defendant: ''From your examination of Mr. Edling, would you say these polypi were or were not the result of any blow that Mr. Edling ever had on the nose?'' The ruling was proper. To have allowed the witness to say whether the blow on the nose did or did not cause the disease would have allowed him to decide an important issue which was for the jury to determine. Such expert opinion should be restricted to the question of whether or not the claimed result could have had its origin in the asserted cause. [Millirons v. Rail-

way, 176 Mo. App. 39, 162 S. W. Rep. 1069; Taylor v. Railway, 165 S. W. Rep. 327.]

Defendant urges a number of other objections to rulings on evidence and on the instructions which we have examined with care and find them either too hypercritical or so obviously ill-grounded that their discussion here would serve no useful purpose and would unnecessarily prolong this opinion. The case was tried without prejudicial error and the verdict was not excessive.

The judgment is affirmed. All concur.