ROSE OLDS, APPELLANT, v. ST. LOUIS NATIONAL BASEBALL CLUB, A CORPORATION, RESPONDENT.—104 S. W. (2d) 746.

St. Louis Court of Appeals. Opinion filed May 4, 1937.

Motion for Rehearing Overruled May 18, 1937.

Writ of Certiorari Denied July 2, 1937.

*John L. Harlan* and *Wilton D. Chapman* for defendant (respondent).

*Woodward & Evans* for appellant.

McCULLEN, J.—This is an action for personal injuries sustained by plaintiff appellant as the result of being struck in the face by a baseball while she was a patron at a professional baseball game played at Sportsman's Park in the city of St. Louis, Missouri, on August 26, 1932. At the trial, at the close of plaintiff's case, the court

gave a peremptory instruction to the jury to find for the defendant respondent, whereupon plaintiff took an involuntary nonsuit with leave to file a motion to set the same aside. Plaintiff duly filed such a motion, which was overruled. In due course plaintiff brings the case to this court by appeal.

Plaintiff's petition alleged, in substance, that defendant is engaged in the business of providing amusement in the form of professional baseball games and occupies premises in the city of St. Louis, Missouri, consisting of a baseball playing field and seats and facilities for patrons attending such games; that on August 26, 1932, plaintiff was a patron at a baseball game conducted by defendant on said premises and paid to defendant the regular admission price for the privilege of viewing said game; that defendant knew that during the progress of a baseball game, batted and thrown baseballs would frequently enter the spaces where patrons sit and that said baseballs were a source of danger to patrons; that on the occasion mentioned, plaintiff seated herself in a portion of the grandstand which was protected by a wire screen, but it became necessary for her to leave the premises before said baseball game was completed and she started towards the nearest exit and immediately after she stepped beyond the protection of said screen she was violently struck in the face and nose by a batted baseball and severely injured. Plaintiff alleged that her injuries were directly caused by the negligence of defendant in failing to provide screens or other protective devices which would prevent batted and thrown baseballs from injuring patrons while in the aisles and exits of the grandstand, when defendant knew, or by the exercise of ordinary care should have known, that without such protection patrons would be liable to suffer injuries from batted and thrown baseballs while entering and leaving the premises.

The amended answer of defendant contained a general denial after which it was alleged that plaintiff's injuries, if any, were directly due to or were contributed to by her own negligence in that plaintiff left the place of safety behind the screen where she had been seated and walked into an aisle in front of which there were no screen, with full knowledge that the game was in progress and a batter was batting and that a foul ball might enter said place and strike and injure her. The amended answer further alleged that whatever injuries plaintiff received were the result of the risk which plaintiff assumed at the time and place mentioned because of the nature of the game and the conditions were the same was in progress, including the aisles and seats, and were not the result of any negligence of defendant.

Defendant is the St. Louis member of the National Baseball League. Its team is known as the St. Louis Cardinals. During the summer months defendant, as a tenant, uses Sportsman's Park in the city of St. Louis for the purpose of having its team play such

games as are scheduled by the National League to be played in St. Louis. On days in the summer when the park is not used by defendant's team, it is used by another St. Louis professional baseball team known as the St. Louis Browns, a member of the American League, to play games scheduled by that League to be played in St. Louis. It is not disputed, however, that on the day in question defendant was in full charge and control of the park, including the grandstand, as well as the ticket sellers, ushers and other attendants customarily used in conducting a professional baseball game.

On the day plaintiff sustained her injuries, defendant's team was playing a regularly scheduled game against another team of the National League called the New York Giants.

Plaintiff testified that she is a married woman and resides in the city of St. Louis with her husband and family; that over a period of about ten years prior to her injury she attended baseball games at the park mentioned; that she had seen baseball games played in smaller parks but had not attended games in any other major league park; that the day in question was known as "Ladies' Day;" that on such days the baseball clubs admit ladies free as far as general admission to the park is concerned; that she and her sister, Mrs. Fred Thoele, arrived at the park at about 2:45 P. M. and that there was a crowd there that day; that she went to the ticket office inside the park and bought two grandstand reserved seats by paying a small amount therefor. She was given two seats in row 5, section L, back of home plate. The seats were behind and protected by a wire screen. The evidence showed that the screen was made in two sections, the first of which was fifty-two feet in width and extended vertically upwards about four feet from the top of the concrete wall of the grandstand. The concrete wall was two feet ten inches high from the floor of box seats which were located in the front part of the grandstand. The individual grandstand seats were back of the boxes and extended backwards and upwards in rows and tiers. The other screen extended diagonally from the top of the first screen to the second deck of the grandstand and was forty-six and a half feet in width. The park layout from the grandstand viewpoint was in the shape of a horse shoe. There were eighteen rows of individual seats in the grandstand with box seats in front of the front row thereof and an aisle running in front of the box seats. The seats in the grandstand were reached by steps leading from the aisle. The aisle led to exits, one of which was to the east and just outside of Section J. There was also an exit to the west just at the corner of Section L. The exits were also referred to as entrances and chutes. The screen was in front of the entire tier of box seats and grandstand seats in that section of the grandstand in which plaintiff and her sister were seated. A patron leaving Section L behind the screened area and walking toward the east exit would have to

walk thirteen feet nine inches after passing beyond the upper screen, and about ten feet after passing beyond the lower screen to reach that exit. On the other side of the screen toward the west there was a three and one-half foot space between the screen and the exit on that side. The evidence shows that the grandstand was made of concrete. There was no dispute as to the park being "a very modern park." There were a number of other exits provided for the patrons and they were allowed to select their own exits in leaving the park.

Plaintiff testified that when she entered the grandstand she was directed to the seats in Section L by an usher at the entrance-exit chute to the east of the screened area. She remained in her seat for the greater part of the game and started to leave the park during the last half of the ninth inning. Leaving her seat, plaintiff walked down the regular aisleway and turned to the right towards the east entrance-exit chute, which would lead out directly to Grand Avenue, where she expected to board a street car to go home. She testified she was forced to leave the game at that time because it was necessary for her to prepare an early evening meal on account of her husband's employment. Plaintiff further testified that a number of other patrons were leaving at the same time by the same aisle and in watching the aisle along which she was walking, she turned her face away from the playing field and while crossing over the unscreened space between the screened area and the entrance-exit chute she was compelled to stop for a short period because her progress was blocked by other persons in the aisle; that when she left her seat, one of the New York players was at bat in the batter's box and as she was walking in the aisle she heard the bat strike the ball and turned her head just in time to be struck on the face by the ball. It is not necessary to describe plaintiff's injuries because no question is raised thereon in this appeal.

Plaintiff testified on cross-examination that she had frequently sat in all different sections of the park, most of the time where there was no screen protection; that she had seen a lot of foul balls batted back by the batters and that behind the screen was the least dangerous section to sit in "if you have to use those exits."

Plaintiff contends that the court erred in directing the jury to return a verdict for defendant, and argues that the evidence was sufficient to make the question of defendant's negligence one for determination by the jury; that the issue of assumption of risk went out of the case upon *prima facie* proof of defendant's negligence and that plaintiff was not guilty of contributory negligence as a matter of law. Defendant on the contrary contends that plaintiff, having voluntarily moved during the progress of the game from a place of safety behind the screen into a position where she could and might be hit and injured, as shown by her own testi-

mony, proved that there was no actionable negligence on the part of defendant and that she was guilty of contributory negligence or assumed the risk of the hazards involved, thus precluding recovery.

Cases of this general character have been before the courts of this State and of other States in which certain principles of law have been announced and applied. However, counsel for the parties herein have not cited, nor have we been able to find, a case in which the facts were exactly like those in the case at bar. Nevertheless, the principles deducible from the cases referred to furnish ample authority for the proper determination of this case.

Defendant was conducting a place of public amusement for profit. Plaintiff was an invitee upon its premises and in its grandstand. Although proprietors of places of public amusement are not insurers of the safety of their patrons, they must nevertheless exercise care for their patrons' safety reasonably adapted to the character of exhibitions given and amusements offered, and the care required is such as is commensurate with the particular conditions and circumstances involved in a given case. [Berberet v. Electric Park Co., 319 Mo. 275, 3 S. W. (2d) 1025, 1029.]

In Murphy v. Winter Garden & Ice Co. (Mo. App.), 280 S. W. 444, it was held that the care required by persons engaged in the business of providing public amusements is such care as is commensurate with the circumstances of the situation to protect patrons from injury.

In Crane v. Exhibition Co., 168 Mo. App. 301, 153 S. W. 1076, plaintiff therein was injured while attending a baseball game in defendant's baseball park. He purchased a ticket for a seat in the grandstand which was protected from foul balls and wild throws by a wire netting. He voluntarily chose, however, to take a seat in another place which was unprotected. During the game he was struck by a foul ball and injured. The court held in that case that plaintiff was guilty of contributory negligence as a matter of law. While the facts in the Crane case, *supra*, are different from those in the case at bar, we believe that the language of the court in that case in reaching its conclusion furnishes a guide in determining the case at bar. In that case the court said:

"In view of the facts that the general public is invited to attend these games, that hard balls are thrown and batted with great force and swiftness, and that such balls often go in the direction of the spectators, we think the duty of defendants towards their patrons included that of providing seats protected by screening from wildly thrown or foul balls for the use of patrons who desired such protection." [Crane v. Exhibition Co., 168 Mo. App. 301, 304, 153 S. W. 1076.]

It will be noted in the case at bar that defendant did provide a screen for the grandstand seats immediately back of home plate in the section where plaintiff and her sister were seated during the game. The question, therefore, to be determined in this case is whether or not defendant performed its duty to exercise the degree of care commensurate with the particular conditions and circumstances shown in evidence herein by admittedly failing to have its screen extend far enough to cover the nearest exit-entrance chutes necessary to be used by patrons who had paid for and occupied seats in the area protected by the screen. It is undisputed that plaintiff was required to walk a distance of thirteen feet nine inches along the aisle to the nearest exit chute without having the protection of the screen. The evidence shows that it was known to defendant that foul balls very frequently entered that portion of the grandstand. The very fact that defendant erected and maintained a screen fifty feet wide immediately back of home plate is conclusive proof of its recognition of the necessity of protecting its patrons in that area. We do not believe it can reasonably be said, as a matter of law, that defendant performed its duty to exercise ordinary care for the safety of its patrons, that is, care commensurate with the known danger of injury to patrons in that area, when it failed to extend its screen so as to cover the entrances and exits necessary to be used by its patrons in going to and from the protected area, or to arrange such entrances and exits in such a manner as to be within the protected area.

Ordinarily negligence is a question of fact for the jury, particularly so where the question is one about which reasonable minds may differ even though the act or omission claimed to be negligent is not in controversy. [Purdy v. Loew's St. Louis Realty & Amusement Corp., 220 Mo. App. 854, 294 S. W. 751, 753.]

In the recent case of Grimes v. American League Baseball Co. (Mo. App.), 78 S. W. (2d) 520, the evidence showed that plaintiff therein was struck by a batted ball during a baseball game between the St. Louis Browns and the Chicago White Sox. She occupied a seat in an unprotected portion of the grandstand of the same baseball park involved in the case at bar. In that case this court gave full recognition to and stated the doctrine that a baseball club, which provides entertainment for profit and invites the public to attend its games, is not an insurer of the safety of its patrons, and further stated that where a patron has the choice of a seat behind a screen or a seat in an unprotected area, voluntarily and with knowledge of the risk chooses an unprotected seat and is struck by a ball, he is either contributorily negligent or assumes the risks ordinarily incident to the game. [Grimes v. American League Baseball Co., *supra*, and cases from various states cited therein.] Nevertheless, it was held in the Grimes case, *supra*,

that even though plaintiff therein chose a seat in a temporary stand which had no protective screen, it was a question for the jury to determine whether the baseball club created an unusual hazard constituting actionable negligence by permitting temporary stands to be maintained in front of the regular stands in close proximity to the playing field.

In Cincinnati Baseball Club Co. v. Eno, 112 Ohio State 175, 147 N. E. 86, the question as to whether the management of a baseball club, in permitting practicing by its baseball team in close proximity to the unscreened section of the grandstand between two games of a double header, was guilty of negligence, or whether a spectator sitting in the unscreened portion of the grandstand during such practicing was guilty of contributory negligence were held to be questions for the jury.

In Wills v. Wisconsin-Minnesota Light & Power Co., 205 N. W. 556, the Supreme Court of Wisconsin held that where the proprietor of an amusement park embracing a baseball field could reasonably have foreseen that a foul ball would be batted into a private highway ninety feet from the batter's plate along which visitors were invited to pass, it was a question for the jury to determine whether defendant might reasonably have protected the public by changing the location of the baseball field or highway or by the use of guards.

In Nickelson v. Cowan (Mo. App.), 9 S. W. (2d) 534, it was held that in order for contributory negligence of a plaintiff to bar a recovery the evidence must conclusively show such negligence on the part of plaintiff, and if plaintiff's negligence is not so shown it is a question for the jury to decide. It must conclusively appear that fair and reasonable minds could not differ on the question of plaintiff's negligence and that unless the evidence is such, the question is one for the determination of the jury. [See, also, Albrecht v. Schultz Belting Co., 299 Mo. 12, 252 S. W. 400.]

In Edling v. Exhibition Co., 181 Mo. App. 327, 168 S. W. 908, plaintiff therein was injured while attending a game of professional baseball at defendant's baseball park. A foul ball came through a hole in the wire netting in the front part of the grandstand and struck and injured plaintiff who was sitting therein. It was held in that case that one of the natural risks encountered by spectators of a professional baseball game is that of being struck by a foul ball and that while the owner of such park did not undertake to insure patrons against any injury from such foul balls, nevertheless, since it was in the business of providing public entertainment for profit, it was bound to exercise reasonable care to protect patrons against such injuries. In answer to the contention of defendant therein that the plaintiff assumed risks not avoidable by reasonable care, the court there said:

"In seating himself where he did plaintiff did not assume the risks resulting from such negligence. The courts of this State have always adhered to the doctrine—of the justice of which there can be no reasonable question—that where one person owes a duty to another, the person for whose protection the duty exists cannot be held to have assumed risks of injury created solely by a negligent breach of such duty. The facts and circumstances disclosed by the evidence of plaintiff would not warrant us in declaring, as a matter of law, that his injury was caused by an ordinary and usual risk assumed by invitees at such public exhibitions." [Edling v. Exhibition Co., 181 Mo. App. l. c. 332, 168 S. W. 908.]

In passing upon the trial court's action in directing a verdict for defendant, we must, under the well-known rule, give plaintiff the benefit of all reasonable inferences arising from the evidence. Defendant herein could not reasonably expect that all of its patrons would remain in their seats throughout the entire game until it was completely finished. In addition to defendant's knowledge, as shown by the evidence, that patrons entered the screened sections at various times while games were in progress, it is reasonable to infer that defendant must have known or by exercising ordinary care would have known that many of its patrons, for various reasons of necessity, would leave their seats in the protected area and if they wished to use the exits would be required to walk through the unscreened part of the aisle to either of the two nearest exits and thus be exposed to the danger of injuries from foul balls against which they were protected while behind the screen. Furthermore, it is a reasonable inference from the evidence that defendant must have known that many persons who attend professional baseball games leave their seats in the protected area, especially when the grandstand is crowded, and move toward the exits in the last regular inning of a game and crowd into the aisles leading to the exits while the game is still going on, just as the evidence showed the conditions to have been in the case at bar at the time plaintiff was injured.

The general rule as to the duty of an owner or occupant of premises with respect to the approaches and as to the means of ingress and egress to and from such premises is stated thus:

"An invitation to enter premises carries with it the duty towards the persons invited to provide reasonably safe means of ingress and egress and where the invitation is to a particular part of the premises, there is a duty to maintain the approaches thereto in a reasonably safe condition for use." [45 C. J. 834, 835.]

We think the principle underlying that rule is applicable in the case at bar. It would be contradictory to hold that defendant owed a duty to afford protection to those of its patrons who desired it, by maintaining a screen in front of that part of its grandstand back of home plate, known to be dangerous because of the likelihood of foul

balls striking patrons therein, and at the same time also hold as a matter of law that it was not necessary for defendant to afford any protection to such patrons in entering and leaving such protected area.

The case of Quinn et al. v. Recreation Park Ass'n, 46 Pac. (2d) 144, is cited by defendant herein as showing that it performed its full duty when it furnished plaintiff with a seat protected by the screen and that plaintiff assumed the risk of the dangers involved when she left the protected area. It is sufficient to say that the California Supreme Court did not have before it in that case the question presented in the case at bar. The question here is not whether defendant furnished or failed to furnish plaintiff with a screened seat, which was the main point involved in the Quinn case, *supra*, but whether or not, in screening only the particular area of the grandstand which it did screen because it regarded the same as dangerous, it failed to exercise due care by concededly failing to provide a screen or other protective device to afford protection to patrons entering or leaving the screened area by way of the entrance-exit toward which plaintiff was walking when she was struck by the ball.

We do not say that defendant was guilty of negligence as a matter of law, but we do hold that the question of defendant's negligence should have been submitted to the jury for decision. Furthermore, under the evidence herein, we would not be justified in holding, as a matter of law, that plaintiff's injuries were caused by the ordinary and usual risks assumed by patrons at such baseball games who pay for and occupy seats in such screened area, or that she was guilty of contributory negligence as a matter of law.

The trial court erred in directing the jury to return a verdict in favor of defendant. The judgment is, therefore, reversed and the cause remanded for a new trial. *Hostetter, P. J.*, and *Becker, J.*, concur.