JENNIE BERBERET v. ELECTRIC PARK AMUSEMENT COMPANY, Appellant.—3 S. W. (2d) 1025.

Division One, March 3, 1928.

*Sebree, Jost & Sebree* and *Henry L. Jost* for appellant.

*J. K. Cubbison, William G. Holt* and *Dumm & Cook* for respondent.

LINDSAY, C.—This case, a suit for damages for personal injuries, is here for the second time upon the one appeal of defendant, taken from a judgment in favor of the plaintiff in the sum of $2500. The amount in controversy did not confer jurisdiction upon this court, and upon the first hearing we transferred the cause to the Kansas City Court of Appeals for the reason that no real constitutional question was raised or existed, giving this court jurisdiction. [310 Mo. 655, 276 S. W. 36.] Upon the hearing in the Court of Appeals the judgment was reversed and the cause remanded, upon the ground that there was error in the giving of plaintiff's Instruction A, purporting to cover the case and authorizing a verdict for the plaintiff. No other assignment of error was discussed. One of the judges dissented, and the cause has been certified to this court, the dissenting judge being of the opinion that the decision of the majority was contrary to certain previous decisions of this court.

The case is now here pursuant to the provisions of Section 6 of the Amendment of 1884 to the Constitution, and except as to the rulings heretofore made upon the alleged constitutional questions, is for consideration as if upon appeal in the first instance. [Keller v. Summers, 262 Mo. 324; Robertson v. Robertson, 270 Mo. 137; Hayes v. Sheffield Ice Co., 282 Mo. 446.]

At the time of the alleged injuries, the defendant owned and operated an amusement park in Kansas City. The plaintiff, a woman of about fifty-seven years, with her husband and her grandson, a boy of nine years, accompanied by a Mrs. Crawford, visited the park on the evening of July 30, 1921, paying the customary entrance fee. While in the park, they went to a merry-go-round. A board walk extended from the merry-go-round to a concrete walk. The boy rode in the merry-go-round; after which, the parties mentioned walked from the merry-go-round along this board walk, which inclined somewhat toward the concrete walk. When they were close to where the board walk joined upon the concrete walk, the plaintiff fell, sustaining the injuries for which she sued. The charge of the plaintiff in her petition, and in the evidence, was that defendant negligently permitted a board to be loose and unfastened; that plaintiff stepped upon such board; that it slipped, or gave way, causing her to fall and injuring her ankles, especially her left ankle. The petition, after preliminary averments, and statement that the approach or walk to said merry-go-round was constructed of wooden timbers, upon which wooden boards were placed, and inclined somewhat toward the concrete walk, alleged ''that defendant had left near the bottom of said incline loose, unfastened and dangerous boards, which were liable to trip people going over same;'' and, that, about 8:30 P. M., the plaintiff, while descending said approach, by reason of the unsafe and dangerous condition of said wooden approach, was tripped and thrown with great force, etc. The petition then makes the following allegations as to negligence: ''Plaintiff further states that she received her injuries by reason of the careless and negligent acts of said defendant and its agents and servants in the failure of said defendant and its agents and servants to provide a safe approach to said merry-go-round, and said defendant was guilty of careless and negligent acts in permitting and leaving a board in said sidewalk in an unsafe and dangerous condition; plaintiff further alleges that said board which caused the plaintiff to fall was loose and unfastened and was liable to move and swerve when stepped on, and defendant was guilty of further negligence in leaving an opening in said board walk and that said board upon which the plaintiff tripped had become loose and unfastened at the south end thereof and was loose and unfastened at the time the plaintiff tripped and fell thereon.''

When the case was called, the defendant objected to the impaneling of a jury, upon the ground that the petition was insufficient. The objection was overruled.

At the beginning of the trial, the rule was invoked as to the witnesses, and the court ruled, over defendant's objection, that Mr. John V. Hill, a witness for defendant, should be excluded from the

court room during the taking of the testimony of the plaintiff, and error is assigned, upon the ground that Mr. Hill was one of defendant's attorneys. After the close of all the evidence, the court permitted the defendant to amend her petition. The amendment consisted in adding after the allegations of negligence, which we have above quoted, the words: "which condition could, by the exercise of ordinary care, have been discovered by defendant." These matters, the exclusion of Mr. Hill, and the allowance of the amendment to the petition, assigned as errors and violations of constitutional rights of defendant, are fully set forth and discussed in the former opinion. We held then, that these rulings by the court under the circumstances, fully set forth in the former opinion, raised no real and substantial constitutional question; and we hold now, under the facts and circumstances, shown in the former opinion, that the trial court was not guilty of an abuse of its discretion, and that reversible error was not committed in the exclusion of Mr. Hill, or in allowing the petition to be amended as was done.

The amendment to the petition was merely a statement in express terms of what was implied in the allegations, which preceded the amendment. The charge that defendant was guilty of careless and negligent acts in permitting and leaving a board in said sidewalk, which was loose and unfastened, and in an unsafe condition was equivalent to a charge that defendant knew, or in the exercise of ordinary care could have known, that the board was loose and in an unsafe condition. An allegation, or a finding, that a defendant negligently caused and permitted an unsafe, described condition, is equivalent to an allegation or a finding that the defendant knew the condition to exist. [Hall v. Mo. Pac. Railroad, 74 Mo. 298, 302; Morton v. Lloyd Construction Co., 280 Mo. 360-381; Johnson v. Railway, 96 Mo. 340; Crane v. Railroad, 87 Mo. 588; Young v. Iron Company, 103 Mo. 324; Midway National Bank v. Davis, 288 Mo. 563.]

Our former opinion fully sets forth the testimony for the defendant concerning the character of construction of the board walk, and the inspection and observation of the same by defendant's servants, which shows that, in fact, the averment contained in the amendment to the petition apprised the defendant of no new issue.

At the close of the whole case, the defendant offered certain peremptory instructions, requiring a finding for the defendant. Of these, we notice particularly defendant's offered Instruction C-A, which would have required a verdict for defendant upon the ground that there was no evidence tending to prove that defendant knew, or by the exercise of reasonable care and diligence, could have ascertained and known the existence of the alleged defect and condition in the inclined floor. This raised the serious question in the case, and requires a somewhat extended statement of the evidence:

The plaintiff described the circumstances under which she fell as follows: "We started down the board inclined walk, and the board gave way with me near the bottom and got my foot in such manner it held me tight, and I lunged and fell sitting; and both ankles turned over and sprained them. . . . Turned so it sprained them, and one was held fast in the sidewalk, understand, where the board slipped or gave way, and the other ankle turned in the lunge that it caused, when holding my foot tight, it caused me to lunge and I just fell on my ankles." Asked about her feet getting caught, she said: "Well, they were caught. I have to tell that if I tell the truth." Again, she described it as follows: "Well, as I neared the bottom of that inclined sidewalk, the board slipped, or gave way, I couldn't say which, and my foot caught in between the crack. . . . My left foot —and it caused me to lunge, and the other foot turned and I went down on it." The plaintiff was cross-examined as to a deposition given by her, and asked whether she had not in her deposition stated that the board broke, and what she would now say, as to whether the board broke or not. Her statement was: "I can't say that it broke; but it slipped or gave way."

Mrs. Crawford, who was walking with plaintiff at the time, testified that plaintiff fell down just as she got to the bottom of the incline leading to the cement walk, but that she did not know what caused her to fall. She said: "Well, all I know about it is that she fell down." The plaintiff was asked if she noticed what it was that caused her to fall. She replied: "No, I did not turn around to look what it was, but I know what it was. The board either gave way or slipped." The defendant read as parts of the deposition of Mrs. Berberet, statements that she did not see any board sticking up; did not feel anything hit her foot, but that her foot went down through the board; that she felt it break down; that it slipped down and her foot went down with it; that the board went down and through the hole; that the board went through the hole; that that was all—the only way she could answer because she did not turn around to see what had happened.

Plaintiff's husband testified that he was walking with the plaintiff and Mrs. Crawford; heard the noise when she hollered or screamed; saw her down; took hold of her on one side, and Mrs. Crawford took hold on the other side and raised her up. He was asked whether he looked to see what, if anything, caused her fall. He answered: "Well, I saw what I thought was it. . . . There was one board that was loose on the west end and apparently was fastened on the other. I could not say whether it was or not, but this board had slipped out of place and left a hole and that was the only thing I could see around there that would cause her to fall. . . . Well, the hole was right under where she fell. I did not

see the board until she had taken a couple of steps. I first looked as soon as we raised her up to see what was the matter and I could see nothing, then after she took a few steps I looked again and saw this board there, I couldn't see it at first because she was standing right over the board, she got right straight up where she went right down.'' He stated that the board was about two or three feet long; about four inches wide and must have been three-quarters of an inch or an inch in thickness. Asked as to its condition—where it was with relation to the hole he said: ''Well, it would slip north out of its place and leave a hole on the south of the board. . . . It was laying on top of the one next to it, that is the west end of this board was on the east end, seemed to be—well, I don't know whether it was nailed or not, it seemed to be in place.'' He was asked how much of a gap or space or hole was there. He said: ''Well, there must have been at least two inches, if not more.''

They spoke to no one connected with the Park or to anyone about the accident, and no one else was aware of it, at the time, and the testimony of plaintiff and her companions was that they walked over from this place to the Follies, and remained there twenty or thirty minutes; that they then started home, plaintiff being assisted by an arm from her husband and from Mrs. Crawford. They walked to the street car line, and plaintiff said: ''It was quite a little ways.'' They rode on the first street car, and transferred to another, and got off and walked home, about two and one-half blocks.

Plaintiff's testimony was that at the Follies her ankles and legs were paining her, and that they became swollen, black and blue; that her left foot was the worst; that she first went to see a doctor about two weeks afterwards; went to his office in an automobile; that she did not go to a doctor until after a friend of hers, a lawyer, spoke to her about this accident about a week after it occurred; that thereafter her ankles pained her, and she went to the doctor as often as necessary; that she never had her ankle in a cast; that the doctor gave her medicine to take inwardly and had her bathe her ankle in hot water, but did not bandage her ankle or put it in a cast; that once she herself bandaged her ankles; that she wore tight laced shoes to protect her ankles. She also testified that her injuries interfered with her doing her housework, and that she continued to suffer pain; that standing and walking caused her ankles to swell and to pain her; that before this accident she had experienced no trouble with them. In her cross-examination she testified: ''I was born with flat feet. I always had them.''

Among the assignments is the claim that the verdict is excessive.

The defendant operated the park for profit; and, to these persons who paid the entrance fee and entered, owed the duty to use reasonable care to make every part of it safe. The rule in this State and

generally, is, that the proprietor, of a place of public amusement owes to his patrons that duty, which, under the particular circumstances, is ordinary care or reasonable care, for their safety. [Nephler v. Woodward, 200 Mo. 179; Oakley v. Richards, 275 Mo. 266; King v. Ringling, 145 Mo. App. 285; Murrell v. Smith, 152 Mo. App. 95; Crane v. Kansas City Base Ball and Exhibition Co., 168 Mo. App. 301; Edling v. Kansas City Base Ball and Exhibition Co., 181 Mo. App. 327; Purdy v. Loew's Realty and Amusement Corporation, 294 S. W. (Mo. App.) 751; Annotation 22 A. L. R. 511.] However, one who invites another to come upon his premises is not an insurer of the safety of such other person (Main v. Lehman, 294 Mo. 579-588); and that general rule applies to proprietors of places of public amusement. [26 R. C. L. p. 714, sec. 15.] The rulings in the cases mentioned show that the care required of the proprietor of a place of public amusement is that which is reasonably adapted to the character of the exhibitions given, the amusements offered, the places to which patrons resort, and also in some cases, the customary conduct of spectators of such exhibitions. It is a care commensurate with the particular conditions and circumstances involved in the given case. In the case at bar, the particular place involved is a board walk, for the use of patrons visiting a merry-go-round, and returning thence to a concrete walk. It is an instance under the general rule which charges an owner of property with a duty toward those he invites upon it. The nature of the use itself, created the corresponding duty, a duty appropriate to the nature of the object, and of its use by the plaintiff—the duty to keep the walk in reasonably safe condition for persons walking thereon.

When the allegations of negligence in plaintiff's petition are considered and when the evidence is considered, the case is referable to the condition of a single board said to be loose and unfastened. The petition, after a statement somewhat general in character, proceeds to the allegation that a board, the "board upon which the plaintiff tripped," and which "had become loose and unfastened . . . was loose and unfastened at the time plaintiff tripped and fell thereon." The allegation that said board upon which the plaintiff tripped had become loose and unfastened at the south end thereof follows immediately the statement that defendant was guilty of further negligence in leaving an opening in said board walk. The plaintiff in her testimony referred to a single board which slipped or gave way. Her husband referred to one board loose at one end which had "slipped out of place," leaving a hole; and referred to this condition as the only thing he saw that would have caused the accident. Under the evidence, the question whether the board was loose and out of place leaving the hole at the time the plaintiff stepped upon it, or, whether it was unfastened and loose, and slipped or gave way as and when

plaintiff stepped upon it, creating a hole, is not entirely clear. The plaintiff's own testimony tended to show the latter condition. If the board was loose and had slipped out of place, leaving a hole before plaintiff stepped upon it, the condition would have been more readily discoverable than if it had been merely unfastened and in a condition to slip when stepped upon. In either event the inquiry must be directed to the question whether there is any evidence to show that defendant knew, or, in the exercise of ordinary care, would have discovered, the unsafe condition. Plaintiff's cause of action under her petition was based upon the claim that the defendant did know, or, in the exercise of ordinary care, should have known, of the unsafe condition. Since, as the cases hold, the defendant was bound to use ordinary care, and was not an insurer of the safety of the plaintiff, it was necessary to show that the condition which existed should have been known to the defendant.

In Nephler v. Woodward, 200 Mo. 179, the ground of the action was that the defendant negligently left a hole three inches in diameter in a carpet upon the aisle of a theatre, and also that the place was dimly lighted; and, that the plaintiff's foot got caught in the hole in the carpet, and she was thrown down and injured. In the opinion in that case it was said the fault of plaintiff's main instruction was that it treated the hole in the carpet and the dim light, as it would treat facts which constitute an obvious danger; that the jury ought not to be left to judge by the result alone, that the alleged condition was dangerous; and that defendants would be liable as for neglect of duty only in case the condition was such that a reasonably prudent man engaged in that business, would, by the exercise of ordinary care, foresee or anticipate danger. The fault with the instruction, it was held, was corrected by an instruction given for defendant which was not in conflict with plaintiff's instruction, but went further and amended the defective statement of the hypothesis presented by plaintiff's instruction. The defendants' instruction submitted the question whether defendants, in the exercise of reasonable and ordinary care, should have foreseen that such hole, if any, existed, would in all probability cause an injury similar to that which plaintiff claimed to have sustained. A material distinction between the facts in that case and the facts in this case, is, that in that case, upon the question of how long the hole had been in the carpet, one of plaintiff's witnesses testified that he had caught his foot in it and stumbled, a week or two before plaintiff's accident. The evidence for the defendants was that there was no hole there at all, and in holding there was no reversible error in the case, it was stated at page 190, that under the instructions, the jury were bound to believe the plaintiff's witness on that point, before they could find for the plaintiff. Manifestly, there were two questions considered in the case. The one, that since there was

testimony that the hole had existed for one or two weeks defendants in the exercise of ordinary care should have known of it; the other, that having knowledge, actual or constructive, as reasonably prudent men in the exercise of ordinary care, they should have foreseen that such a hole, if it existed, would probably cause such an injury as that complained of.

In the case at bar, the plaintiff had no evidence of the condition of the board which caused her to trip, at any time, or during any period before the accident. The testimony for the defendant was that there was no loose or unfastened board, nor hole in the walk; that none of them had seen or heard of this or any board being loose. There is no testimony that the board which the plaintiff's husband said he saw was decayed, or that the stringer was decayed. His testimony was also that he did not know whether it was nailed or not. The sum of the testimony for plaintiff is that when she stepped upon the board, it slipped or gave way, and, that after she arose, one end of the board was loose, and had slipped, leaving a hole.

In Hollis v. Merchants' Association, 205 Mo. 508, the plaintiff was injured while riding in a gondola in a place of amusement. As to the facts, it is stated in the opinion there was substantial evidence that plaintiff's injury was caused by negligence of the persons in charge of the gondola, the testimony showing it was run at a high, unusual and dangerous rate of speed when the axle broke, and the axle had a defect in it. It was held that a submissible case was made. In the discussion (l. c. 520) reference was made to the liability of the owner of premises who invites others to enter his premises, arising from injury due to the unsafe condition of the premises or approaches thereto, and approval was given to a statement of the rule, that such owner is liable to the person "injured by reason of the unsafe condition of the premises or the approaches thereto, such unsafe condition being known, or such as ought to have been known, to the owner or occupant."

In cases based upon an injury sustained by a pedestrian on a sidewalk of a city, by reason of the defective and unsafe condition of the walk, it is the uniform rule in this State that the plaintiff must show actual knowledge of the defect on the part of the city, or, show there existed a sufficient length of time before the accident, such a state of facts as to justify the inference that the city knew that the walk, by reason of its defective condition, was unsafe and dangerous. [Carvin v. St. Louis, 151 Mo. 334; Buckley v. Kansas City, 156 Mo. 16; Dinsmore v. St. Louis, 192 Mo. 267; Ball v. Neosho, 109 Mo. App. 683.]

We refer to the rule of liability as to cities, not assuming, however, to say that in every case the proprietor of a place of public amusement should not be held more strictly accountable than a city, because of a defective walk, approach or passway, but do so because

of the similarity of the physical conditions, and of the use in such cases.

Under the pleadings and the evidence, the doctrine *res ipsa loquitur* cannot apply in this case, nor the strict rule applicable to common carriers.

The plaintiff's case is founded upon the claim that the board had become unfastened and loose, and was unfastened and loose before she stepped upon it, and that when she stepped upon it, it slipped or gave way, and that defendant, in the exercise of ordinary care, would have discovered its unsafe and dangerous condition. The evidence wholly fails to sustain the petition in that regard. There is nothing to show the condition of the board, one hour, or one day, before plaintiff's injury, except the fact that when she stepped upon it, it slipped or gave way, and, after she arose, one end of it was out of place, leaving a space of two inches or more. It was not shown that the board was originally defective; or that the board or the stringer upon which it lay had decayed; or, that it had not been nailed; or that, if nailed, the nails had come out.

Upon the grounds stated, our conclusion is the judgment must be reversed. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.