Ethel SCHAMEL (Plaintiff), Respondent,

v.

ST. LOUIS ARENA CORPORATION (Defendant), Appellant.

No. 30155.

St. Louis Court of Appeals.
Missouri.
May 19, 1959.

David J. Tompkins, Ackert, Giesecke & Tompkins, St. Louis, for appellant.

Edmund W. Albright, St. Louis, for respondent.

WOLFE, Presiding Judge.

This is an action to recover damages arising out of personal injuries sustained by the plaintiff when she fell in a rollerskating rink operated by the defendant in the City of St. Louis. There was a verdict· and judgment for the plaintiff in the sum of $3,500 and after the trial court overruled a timely motion for a new trial the defendant appealed.

The evidence revealed that the plaintiff, a woman fifty-one years of age in the company of a man named Czerwinski, went to the Arena Rollerskating Rink on October 23, 1956. They arrived at the rink around 7:45 in the evening and after having put on their skates they waited until 8:00 o'clock for the skating to start.

The rink was 220 feet long and 110 feet in width, with rounded corners. Those desiring to do fancy skating were required to skate in a designated place in the center of the rink while most of the skaters circled it, all going in the same direction. There was organ music to which they could skate and the organist made periodical announcements that there was to be no fast skating or weaving.

About half an hour after the plaintiff started skating a new group of skaters came into the rink and among them was a young man wearing a particularly noticeable brown and yellow shirt. He sped around the floor and was weaving in and out among the skaters. The plaintiff said that he was skating at a speed of about 20 miles an hour and weaving in a fashion prohibited in the rink. This was his manner of skating all evening. Plaintiff stated that while passing her at a speed of about 20 miles per hour one of his skates struck one of hers, causing her to fall and break her wrist. At the time that she fell she was skating by herself, but Czerwinski had skated with her at times throughout the evening.

Czerwinski testified that he was employed as an orderly at Christian Hospital in St. Louis. He had skated for many years and in many rinks throughout the country. He had been employed as a floor manager in a rink for two summers and was acquainted with the duties of the floor guards that the rinks employ. He stated that the organist made this statement: "Please skate slow, no fast or reckless skating, and no weaving." From his experience as a skater he could tell the speed at which patrons were skating. He said that the rate of speed of the average person in the rink was about

10 miles per hour. He noticed the young man in the brown shirt skating at a speed of about 18 to 20 miles per hour and going back and forth across the outside circle of the rink.

This witness and the plaintiff both testified that there was one guard on the floor. The plaintiff said that the guard was skating backwards and talking to a young woman, but that he was on the floor all the time the young man in the brown shirt was skating fast. Czerwinski said that he saw the fast skater in the brown shirt pass the guard quite a few times and that the guard made no effort to stop him. This witness also testified that he was skating at about 5 to 6 miles per hour when he was passed by the skater in the brown shirt who was going three times as fast, and that he next saw him by the side of Mrs. Schamel, the plaintiff. She had fallen and Czerwinski skated to her aid and helped her to her feet.

Both of the witnesses on cross-examination stated that they had seen many people fall while skating. They both stated that the man in the brown shirt had not bumped into any other skaters prior to the plaintiff's fall and that they had not called the guard's attention to the fast skating and weaving done by the man in the brown shirt. Czerwinski and the guard took the plaintiff to the first-aid room where her arm was bandaged and she was taken by Czerwinski to a hospital.

The guard testified on behalf of the defendant. He stated that he skated backwards to watch persons who were unruly or going too fast. He helped those who fell down. He did not see the plaintiff fall, but he helped her to the first-aid room. He had at times stopped people who were weaving or going too fast but he did not see any one doing so on the night in question. He stated that going fast and weaving created a danger of accident.

The manager also testified, stating that on the night in question there were only 222 paid admissions to the rink which could accommodate 1,000 skaters. He said that they had a rule against speed skating. He also testified that he saw the plaintiff in the first-aid room but she said nothing about a fast skater causing her trouble.

The only point raised by this appeal is that the court erred in overruling the defendant's motion for a directed verdict offered first at the close of the plaintiff's case and again at the close of all the evidence. It is contended that the proprietor of the rink was not an insurer of the safety of its patrons and that the defendant was required to exercise no greater care than that which would be reasonably adapted to the amusement or activities afforded by the skating rink. As an abstract statement of the duty of the operator of a skating rink, we find no objection to appellant's statement, but in applying it to the facts we have recited we fail to see how the defendant is aided by it.

There was evidence that the party who struck the plaintiff had been skating at a high speed and had been weaving across the rink in violation of a safety regulation of the rink. All of this had been done in the presence of the guard who could have seen him. This skater was skating at a fast rate of speed when he struck the plaintiff. We therefore have evidence that the conduct of the offending skater had been obvious for some time; that the conduct was dangerous; that it was against the established rules of the rink in question; and that it continued until the plaintiff was struck and caused to fall.

We are cited to three cases which the defendant maintains are in support of its contention that the evidence failed to show any negligence on its part. The first of these is Dickinson v. Eden Theatre Co., 360 Mo. 941, 231 S.W.2d 609. The plaintiff in that case sought to recover for injuries sustained in the lobby of a theatre when a man selling newspapers bumped into her. There was evidence that the news vendor moved in and out among the patrons of the theatre in the lobby selling newspapers to

them and that on one prior occasion he had bumped shoulders with a patron. The court held that there was nothing inherently dangerous in the conduct of the vendor and that the one isolated instance of bumping into a patron prior to the accident in suit was not sufficient to put the defendant on notice that injury to patrons might result from the vendor's presence in the lobby. The case appears to be readily distinguishable in that the evidence in the case under consideration shows that the fast skating and weaving was dangerous and known to be dangerous by the defendant.

The second case relied upon is Berberet v. Electric Park Amusement Co., 319 Mo. 275, 3 S.W.2d 1025, 61 A.L.R. 1269. It has to do with injuries caused by a loose board in a wooden walk leading to a merry-go-round. The court held that there was no evidence that the defendant had or could have had notice of the defect. This case does not appear to be factually comparable in any way to the matter before us.

The third case to which we are cited is Reay v. Reorganization Investment Co., Mo.App., 224 S.W.2d 580, by this court and involving the same rollerskating rink which was at that time under different ownership. The facts are similar to the extent that the plaintiff while skating was knocked down by another skater. There was evidence by her skating partner that he had seen the other skater skating fast and "zigzagging". There was no evidence that the conduct of the skater was dangerous and such that the guard should have noted and stopped. There was no evidence that he was so skating when he bumped into the plaintiff and the evidence was quite vague as to the part of the rink where he was said to be zigzagging. The trial court set aside a verdict for the plaintiff and we sustained the action of the trial court because of lack of evidence from which it could be found that the defendant knew or in the exercise of ordinary care could have known that there was conduct in the rink that might endanger its patrons. It differs quite plainly from the matter before us for as we have stated there was evidence in the instant case from which the jury could conclude that the conduct of the fast skater was obvious and was likely to endanger some patron.

In Hughes v. St. Louis National League Baseball Club, 359 Mo. 993, 224 S.W.2d 989, loc. cit. 994, the Supreme Court stated:

"* * * proprietors of a place of public amusement may not, without liability, permit activities of third persons, which are dangerous to patrons, to continue, after they know or by the exercise of reasonable care could have known of them, when by the exercise of reasonable care they could have been able to protect patrons therefrom by controlling or preventing such activities. See American Law Institute, Restatement of Torts, Sec. 348."

This states the rule governing facts such as those before us.

It is also asserted that the plaintiff assumed the risk of falling and colliding with others when she engaged in skating at the rink. Again to a limited extent this is true. She assumed risks that were inherent in the sport or amusement in which she was engaged, such as falls and collisions with other skaters brought about by her own or other skaters lack of skill or clumsiness. Such things are not extraordinary occurrences in skating rinks. Reay v. Reorganization Investment Co., Mo.App., 224 S.W.2d 580. But she did not assume any extraordinary risks caused by the obvious misconduct of other patrons which could have been detected and controlled by the defendant. Hughes v. St. Louis National League Baseball Club, supra.

It is our conclusion that the plaintiff made a submissible case for the jury and the trial court did not err in overruling defendant's motion for a directed verdict. The judgment is affirmed.

ANDERSON and RUDDY, JJ., concur.