Carol Ann SPEAR, a Minor, by Earl Spear,
Her Next Friend (Plaintiff),
Respondent,

v.

HEINE MEINE, INC., a Corporation
(Defendant), Appellant.

No. 47832.

Supreme Court of Missouri,

Division No. 1.

Jan. 9, 1961.

Motion for Rehearing or to Transfer to
Court en Banc Denied
Feb. 13, 1961.

Fordyce, Mayne, Hartman, Renard & Stribling, Fred W. Schwarz, William W. Sleater, Jr., St. Louis, for appellant.

N. Murry Edwards, Ninian M. Edwards, Clayton, for respondent.

DALTON, Judge.

This is an action for damages for personal injuries sustained by plaintiff, a spectator at a baseball game, when she was struck and severely injured by a foul ball, resulting in the loss of sight in her left eye. The action was instituted against defendant, Heine Meine, Inc., a corporation, the owner of the baseball field and against its lessee, Lemay Baseball Association, a corporation, under whose sponsorship the baseball game was being played. At the close of all the evidence the court directed a verdict in favor of the latter corporation (a charitable, nonprofit corporation incorporated by pro forma decree), hereinafter referred to as Association. The cause was submitted against Heine Meine, Inc. (hereinafter referred to as defendant) on the theory that plaintiff, at the time she was injured, was a business invitee of said defendant to whom defendant owed the duty of exercising ordinary care and prudence to maintain the premises in a reasonably safe condition for her use. Plaintiff's verdict-directing instruction submitted a finding that defendant was in possession and control of the premises where plaintiff was injured; that defendant negligently failed "to provide a reasonably safe means, immediately next to and adjacent to the screened seats, for its patrons and customers to enter and to exit from the said seats or stands behind the screened backstop"; and that such negligence of defendant caused plaintiff's in-

juries. Verdict and judgment were for plaintiff for $40,000. Defendant has appealed and here contends that plaintiff failed to make a submissible case for the jury and that the court erred (1) in overruling its motion for a directed verdict in its favor at the close of all the evidence and (2) in overruling its motion for judgment notwithstanding the verdict for plaintiff.

Plaintiff in her petition alleged that the defendant, Heine Meine, Inc., a corporation, "did at all times hereinafter mentioned own, maintain and operate a baseball field at or near 155 Lemay Ferry Road, Lemay, Missouri, and which said baseball field, and stands, and all parts thereof were owned, operated and maintained by said defendants for the purpose of providing entertainment for the customers of the defendants * * * that said defendants did invite into said baseball field, its customers and members of the general public for the purpose of selling to said persons the various merchandise sold from said defendants' tavern, liquor store and outside pavilion * * *.

"That defendant Lemay Baseball Association, a corporation, did at all times hereinafter mentioned, lease and rent from the defendant Heine Meine, Inc., a corporation, the said baseball field owned by said defendant and located at or near 155 Lemay Ferry Road, Lemay, Missouri, and further, that the defendant, Lemay Baseball Association, a corporation, was at all times hereinafter mentioned in charge of and did conduct baseball games held at said baseball field wherein the members of the general public were invited to attend said baseball games * * * that on or about the 27th day of July, 1957, * * * while plaintiff was on said premises of the defendants and as a direct result of the joint and concurrent negligence of the defendants * * * she was caused to be struck in her head and face by a baseball and injured as hereinafter described."

While plaintiff did not offer the lease in evidence she did submit a finding in her verdict-directing instruction as to certain

terms of the lease, to wit: "* * * and if you further find that in accordance with the written terms of the lease mentioned in the evidence, that the defendant, Heine Meine, Inc., had the duty to maintain the Meine Baseball Field mentioned in the evidence * * *." Plaintiff also relies upon other specific provisions of the mentioned lease to support her contention (1) that defendant, Heine Meine, Inc., by the lease did not relinquish or release to the lessee Association its right to control the particular premises where she was injured; and (2) that at no time did defendant lessor ever "deliver to the lessee the exclusive right and control of said premises owned by the said defendant." In view of plaintiff's pleadings, the submission in her instruction and her contentions on this appeal, we shall consider the existence of the mentioned lease, as offered in evidence by defendant, to be a conceded fact.

The lease dated, executed and acknowledged on September 15, 1956 designated Heine Meine, Inc., party of the first part and Lemay Baseball Association party of the second part. The lease recites that first party is the owner of a tract of land "known as Meine's Baseball Field" and provides: (1) that in consideration of $1 paid to first party by second party "the Party of the First Part does herewith lease to the Party of the Second Part the aforesaid described land known as Meine's Baseball Field for a period of three (3) years from January 1, 1957 to December 31, 1960 for the rental of One Dollar ($1.00) per year, payable in advance on the following terms and conditions: (2) The Party of the First Part retains all concessionary rights for the sale of food and refreshments. (3) The Party of the First Part also reserves the right to retain one night per week for the use of said baseball field for the Heine Meine Senior Baseball League and the Party of the First Part shall be responsible for the electricity charge or costs thereof for that night. (4) The Party of the First Part shall be responsible for the upkeep of the baseball field at all times and shall keep it in reason-

ably fair condition." The lessee was further given the right to install and to remove a lighting system and was granted "an option to purchase the aforesaid baseball field and fieldhouse at a sum not to exceed Fifty Thousand ($50,000.00) Dollars."

At the time plaintiff was injured there was a 71½ foot screened backstop some 35 feet behind home plate. Behind the screened backstop there were four tiers of seats. The ends of these seats extended five or six feet beyond the backstop at each end. No exit ways or aisles to and from these seats were provided behind the backstop. The only access was at the exposed ends of the seats. A row or two of exposed seats, referred to as bleachers, were located on each side of the baseball field, in addition to players' benches. While plaintiff's evidence showed that the backstop screen was built by defendant in 1943, plaintiff offered no evidence tending to show the existence of any seats or other improvements on the area immediately surrounding the baseball diamond, except the backstop, at the time of the execution of the mentioned lease.

Also, at the time plaintiff was injured the defendant owned and operated two taverns in the immediate vicinity of the ball field, one referred to as the 5% beer tavern at 155 Lemay Ferry Road, adjacent to said road, and the other at 153 Lemay Ferry Road, referred to as the 3.2 beer tavern, located to the side away from the other tavern and back from the road. This latter tavern is situated parallel to the third-base side of the baseball diamond. Generally speaking, this tavern extended lengthwise in a northwardly and southwardly direction. The west side of the tavern opened in the direction of the baseball field. Plaintiff said, "This is the one by the field." The east side of the tavern faced the parking lot with an entranceway from Lemay Ferry Road. There was a sign erected on Lemay Ferry Road, stating: "Heine Meine Baseball Field—Entrance", with an arrow pointing to the entrance. On the east side of the 3.2 tavern the sign stated: "Meine Field, Home of Lemay

Baseball Assn., Inc." There was also a Budweiser sign and two Coca Cola signs on this tavern building.

In the immediate vicinity of this 3.2 tavern there was a building referred to as a pavilion, where defendant made sales of 3.2 beer, popcorn and soda to the public on Sunday when the 5% tavern was closed, and on other occasions "when the size of the crowd was such as to prevent them all being served in the tavern at 153 Lemay Ferry Road" (the 3.2 tavern). The photographs in evidence show the location of these several buildings with reference to the area where the baseball diamond was located. Only defendant's evidence shows the distance in feet of these buildings from the baseball diamond and its surroundings. The testimony and photographs show the entire area to be open and unfenced, both the area upon which the mentioned buildings were located and the area where the baseball diamond, screened seats, backstop, bleachers and players' benches were located. There was no fence or obstruction between the two mentioned areas.

There was much evidence that spectators attending the baseball games held on the mentioned baseball field purchased refreshments from the defendant in the mentioned taverns and pavilion. In fact, the evidence shows that the reason for operating the 3.2 tavern on Sunday was to sell soda, popcorn and refreshments to persons who came to the area to attend the ball games played on the mentioned baseball field. There was, however, no evidence that any such sales were made on the baseball diamond or on or about the area immediately surrounding it, such as in the screened seats, the bleachers or the players' benches. The sales shown were made in the mentioned taverns owned and operated by defendant or in the mentioned pavilion. In plaintiff's Instruction 1, plaintiff submitted a finding that the 3.2 tavern and the pavilion were located "at or near said baseball field." Plaintiff offered no evidence as to distance of these buildings from the baseball diamond

except as might be inferred from the photographs.

On July 27, 1957, about 6:30 p. m., plaintiff, then 16 years of age, went to the mentioned baseball field with a boy friend who was to play on one of the baseball teams that evening. When her escort went out on the field to warm up for the game, she visited with some of her girl friends and then went to defendant's 3.2 tavern and bought a soda. There were other people going back and forth between the ball game and the defendant's tavern. Plaintiff went inside the building to make her purchase and then returned to the ball field and took a seat behind the screened backstop, behind home plate. She sat on the right-hand side as she faced the field, or diamond. The ball game had already started and batters were batting.

It had been prearranged that plaintiff's parents and her younger brother and sister would come to join her at the game on that evening. While the ball game was in progress, plaintiff saw her family approaching and left her seat and started to walk out next to the western-most edge of the screened seats. She met her parents at a point no more than 5 or 6 feet from the ends of the screened seats and engaged in a momentary conversation with them. She asked her father for some money to go back to defendant's tavern to purchase some popcorn or soda pop for her younger brother and sister. Just as her father was handing her some money for this purpose, a baseball from the bat of one of the players struck her flush in the left eye knocking her to the ground and rendering her unconscious. She had been standing facing the field, while her father faced away.

When plaintiff entered the field there was no admission charged. She did not see anybody pay any admission and you didn't have to have any ticket or any money to go on the field, nor was there any gate or entranceway. She was also at liberty to stand or sit at any place that she liked.

When plaintiff's father, his wife and two children came to the baseball field that night, he had parked his car on the north side of the field and walked across.

On the evening that plaintiff was injured one Miss Collins made purchases from the defendant at its tavern next to the pavilion, that is in the tavern building next to the baseball field. Defendant was not selling anything in the pavilion. The witness had been sitting in the bleachers, but went to the tavern, bought a soda, and came back to the bleachers and the ball game.

There was other evidence offered by way of admission against interest wherein defendant's president had testified in depositions that the defendant was in the business of operating taverns, one 5% and one 3.2, the baseball diamond and baseball school; that the tavern at 153 Lemay Ferry Road "adjoins the baseball field"; that the baseball field uses the same address as this tavern, 153 Lemay Ferry Road; that the backstop on the baseball field was erected by defendant in 1943 or 1944; that defendant owned the ground for the baseball field and also where the taverns and pavilion were located; that it sold soda, popcorn and beverages from the tavern to the public and to the spectators who patronized the baseball games; that sales were made from the pavilion, which was 40 feet south of the 3.2 tavern, as well as from "the tavern that is nearest the baseball field"; that this 3.2 tavern had doors so that people from the baseball field could come right into the tavern to buy things; that no one else sold beer or soda to the patrons of the baseball field in 1957, or at the time plaintiff was injured; and that, at one time, defendant had put up signs on the backstop warning the people to sit behind the screen but that you could not keep them up as kids would tear them down. It did not appear whether such signs were put up before or after the date of the mentioned lease. The defendant's vice-president in depositions had stated that the spectators at the baseball field came into the taverns to purchase merchandise, but that defendant never had employees circulating among the crowd during the baseball season, selling beverages and popcorn and so forth. People had to come to the pavilion or taverns to buy.

Defendant's evidence tended to show that when plaintiff was injured there were two long and two short rows of seats along the right field (first-base side); that there was a 30 foot opening between the right-field bleachers and the end of the screened seats; that the 3.2 tavern was located west of the ball field; that the distance was 137 feet and 6 inches from the left-field base line; and that the open pavilion was 93 feet 6 inches from the left-field base line. While plaintiff's Exhibits 1 and 6 show the several locations and distances, as of July 27, 1957, they do not, as stated, show them in measured feet. The evidence shows there had been no change in the location of the left-field base line or the location of the mentioned buildings between the date of plaintiff's injury and the time of the measurements and the taking of the photographs by plaintiff and defendant.

The four rows of seats behind the backstop screen were so located that there was a six foot space or aisle between the front row and the screen, but spectators entered or left the seats from the seat ends, which were unprotected, because extending beyond the screen at either end.

There was evidence that the Lemay Baseball Association was organized in 1948; that it had 25 board members and approximately 300 other members; that it had 54 baseball teams in its organization; that different organizations helped sponsor teams; that the mentioned lease was executed in September 1956; that, when the baseball field was leased and possession taken, the improvements consisted of a screened backstop and wings exactly as it was at the time of the trial, with a baseball diamond laid out as a regular playing field; that there were no screened seats, no bleachers, no players' benches and no switch house; that the Association purchased posts, installed lights, constructed a concrete block build-

ing to house the main light switches, built bleachers on the first and third-base lines and seats for spectators behind the backstop screen; that the Association borrowed the money and paid for all improvements; and that the defendant had never made any repairs, or furnished any material or attempted any maintenance since the Association took over the leased property. The Association derived its income from donations, collections by passing the box at games, general donations and membership dues. It arranged for games to be played on the baseball field. No admission was charged and there were no tickets required or price paid for any seat.

The president of the Association and the president of defendant corporation both testified that paragraph 4 of the lease did not represent the agreement between the parties, since the agreement was that the Association would take care of the ball field and facilities; and that after the discovery of the error in the written lease no correction was made, because the Association was carrying out its agreement to take care of the ball field. We shall disregard this testimony, since plaintiff, on the issue here can rely on the written provisions of the lease.

Defendant's evidence further tended to show that the description in the lease, Meine's Baseball Field, conformed to what the property was "known as"; and that the ball field included parking area, bathrooms and clubhouse facilities. The president of Association testified that he had observed "people going from the baseball field up to the tavern here (3.2) and buying soda pop or beer and bringing it back down and watching the game." Counsel for plaintiff asked the question and witness answered "yes." There was evidence that the 3.2 tavern was located on the same tract of ground as the baseball field, but on higher ground and that this 3.2 tavern was southeast of the baseball field. The evidence shows that defendant owned a considerable area in addition to the baseball field. The baseball field is level ground. It was the

understanding of the Association's president that Association "leased the Heine Meine Ballfield with the pavilion and rest room privileges and parking space * * * and club house", since "That's what we always used. * * * We did not lease the tavern, 3.2 or 5%." This pavilion was also referred to as an open-air shelter house. The defendant retained all concession rights for sale of food or refreshments, "if they come and get it at his place. * * * If anybody wanted anything, they had to go to the 3.2 place or 5% and have to purchase it."

Witness Meine, president of the defendant corporation, testified that he interpreted the lease "to cover the baseball field and backstop, that is, the playing field as far back as to the pavilion and the tavern and the club house." Witness Meine further testified that defendant sold drinks, popcorn, potato chips and things of that nature from the 3.2 tavern but his corporation retained no control over the baseball field, the backstop included, or any property leased to the Association. He further said that the concession rights retained and intended to be covered by the provision in the lease were those his company was occupying and using, to wit: the 3.2 tavern, where sales were made to people from the baseball field, "if they came to us." All defendant's photographs of the ball field and surroundings were received in evidence by agreement of the parties.

It will be noted that much of defendant's evidence supports the allegations of plaintiff's petition that defendant sold merchandise to the general public "from said defendant's tavern, liquor store and outside pavilion"; and that Association "did at all times hereinafter mentioned, lease and rent from the defendant Heine Meine, Inc., a corporation the said baseball field owned by said defendant" and that Association "was at all times hereinafter mentioned in charge of and did conduct baseball games held at said baseball field wherein the members of the general public were invited to attend said baseball games."

For our purposes here we disregard defendant's evidence tending to show that plaintiff was not at the location claimed when she was injured.

■■ Did plaintiff make a case for the jury against defendant-appellant? Were the facts in evidence such as to impose upon defendant a legal duty to provide a reasonably safe means, immediately next and adjacent to the screened seats, for plaintiff, a spectator at the ball game and a recent patron of defendant at a nearby tavern, to enter and exit from the said screened seats from behind a screened backstop? We think the decisive issue is was the defendant in possession or control of the premises where plaintiff was injured. The burden of proof rested upon the plaintiff to make out her case. Plaintiff-respondent insists that a favorable view of all the evidence is such as to impose the mentioned duty. In determining the issue presented we shall consider plaintiff's evidence as true and give her the benefit of all favorable inferences arising therefrom, but reject unfavorable inferences and evidence. Hahn v. Brueseke, 348 Mo. 708, 155 S.W.2d 98, 100; Holmes v. McNeil, 356 Mo. 763, 203 S.W.2d 665, 668. However, in applying this rule outstanding conceded or admitted facts may not be ignored.

As to the property covered by the description in the lease, plaintiff in the trial of the cause took the position that "what the lease covers" was a question of fact for the jury. As respondent here, she contends that there is no detailed description of the premises leased; that an inference can be drawn from the main entranceway signs that the Meine Baseball Field "commences at the entranceway on Lemay Ferry Road"; that "for all intents and purposes Heine Meine Baseball Field extended up to the road where the traffic was"; that "it is quite obvious that these premises * * * included all of the area where the tavern and pavilion were located"; and that "at no time did the defendant * * * ever deliver to the lessee the exclusive right and control of the premises owned by defendant."

The lease of the baseball field was in evidence and there was no testimony that the property described in the lease covered all of defendant's adjoining property and the improvements thereon. Nor can such fact be inferred, since respondent's position is that defendant rented the ball field for $1 per year so that it could be used to draw crowds to the area so that defendant could sell drinks and merchandise from its taverns to baseball spectators. No evidence supports the contention that the taverns were included in the lease or possession of either was ever surrendered to Association. Nor does any testimony support the contention that defendant did not surrender possession of the area where plaintiff was injured. There is no contention that the area where plaintiff was injured was not *leased* to the Association, the question is as to retained joint possession and control. As far as this case is concerned there is no issue of fact for a jury as to what premises the lease covered.

Respondent insists that the evidence shows that "the defendant was a proprietor of public amusement and * * * that the defendant did invite the public to use its accommodations and, therefore, the defendant is charged with the duty to keep its premises in a reasonably safe condition" for use by such invitees and patrons. Respondent cites Berberet v. Electric Park Amusement Co., 319 Mo. 275, 3 S.W.2d 1025, 1029(5-9), 61 A.L.R. 1269; Hollis v. Kansas City, Mo., Retail Merchants' Ass'n, 205 Mo. 508, 103 S.W. 32, 36, 14 L.R.A., N.S., 284; McCollum v. Winnwood Amusement Co., 332 Mo. 779, 59 S.W.2d 693, 697; Perkins v. Byrnes, 364 Mo. 849, 269 S.W. 2d 52, 54(3), 48 A.L.R.2d 97; Purdy v. Loew's St. Louis Realty & Amusement Corp., 220 Mo.App. 854, 294 S.W. 751 and other cases. These cases have no application here unless plaintiff offered substantial evidence tending to prove that defendant was a proprietor in possession or control of the mentioned premises and owed plaintiff some duty.

On the issue of possession and control of the premises where plaintiff was injured

respondent relies on particular parts of the evidence appearing in the record, including the testimony of defendant's president as follows: "A. Well, the type of business we do now is tavern business, 5 percent, the 3.2 tavern business for Sundays, the baseball diamond and the school, baseball school." We think this statement insufficient to carry the case to the jury in view of plaintiff's own pleadings and the several provisions of the admitted lease by one provision of which, the defendant reserved the right to retain the use of "said baseball field" one night per week for the "Heine Meine Senior Baseball League." There was no evidence that plaintiff was injured on any night reserved by defendant. Respondent also offered and relies on an alleged admission of defendant's president as follows: "Q. Were there any warning signs or precautionary signs placed about where the spectators would sit, giving them any warning of any baseballs going through the air, or warning signs of any kind? A. We had them up, but they would destroy them, they would tear them down. You couldn't keep them up, kids would wreck them. Q. In other words, there would be erection of certain signs? A. Warning would be up there to sit back of the stop." It will be noted that no time was fixed as to these signs with reference to the date of the lease or plaintiff's injury, although plaintiff's evidence showed the construction of the backstop in 1943. Absent a showing that such signs were posted by defendant after the execution of the lease or at a time Association was otherwise entitled to possession and control the evidence does not aid plaintiff in her attempt to show joint possession and control by defendant.

Respondent relies on two provisions of the lease in support of her contention that defendant did not relinquish control of the premises where plaintiff was injured. These provisions are: (1) That "party of the first part retains all concessionary rights for the sale of food and refreshments" and (2) "party of the first part shall be responsible for the upkeep of the baseball field at all times and shall keep it in reasonably fair condition." Respondent argues that defendant "retained possession of all of the premises leased for the purpose of selling merchandise and for the maintenance of the same", and that "the clause in the lease, wherein the concession rights were retained, was placed there for the purpose of granting to the defendant the exclusive right to sell food and refreshments to the patrons of the baseball field." That the purpose was to sell refreshments to the patrons of the ball games is conceded, but plaintiff offered no evidence tending to show that possession of the premises in question were not surrendered to the lessee, while defendant's evidence shows that the lessee went into possession under the lease and proceeded to make certain improvements. Plaintiff's petition shows transfer of control and use by Association. Respondent insists that the evidence clearly shows "that the spectators at the baseball game purchased refreshments from defendant's tavern and pavilion"; and that these facts show "the invitation to the general public to enter the premises and buy refreshments from the defendant." However, the plaintiff was not injured in the tavern or near the pavilion, but in the area on the opposite side of the baseball field. The retention of rights and the sale of refreshments in the tavern had no connection with plaintiff's injury. Plaintiff offered no evidence as to the existence of any improvements on the leased premises at the time of the lease, other than that the baseball diamond was laid out and a screened backstop had been constructed. Plaintiff's evidence did not show the existence of any screened seats, bleachers or players' benches, when the lease was made, while defendant's evidence showed that there were none. See Sec. 355, Restatement of Law of Torts.

■■■ While the lessor retained "all concessionary rights" on the leased property, plaintiff offered no evidence tending to show that defendant ever exercised these rights by making sales of merchandise on the leased premises. In any event the retention

of such rights was not the proximate cause of plaintiff's injury, nor could such retention of rights by the lessor be made the basis of a duty to construct or reconstruct or change improvements made by the lessee on the leased premises or to make the added improvements reasonably safe for the lessee's invitees. See 52 Am.Jur. 303, Theaters, Shows, Exhibitions, Sec. 59. Nor could the provision of the lease that defendant "be responsible for the upkeep of the baseball field at all times and * * * keep it in reasonably fair condition" impose a duty on defendant to dismantle improvements by the lessee or require lessor "to provide a reasonably safe means, immediately next to and adjacent to the screened seats" for spectators attending the ball game "to enter and to exit from said seats or stands behind the screened backstop", even though the spectators at the ball game might from time to time during the game leave the area of the baseball field and purchase merchandise from defendant at its tavern on an adjoining area. Nor could the fact of such sales at defendant's taverns as alleged in plaintiff's petition and as submitted in plaintiff's verdict-directing instruction impose any such legal duty on defendant. This is particularly true in this case where the plaintiff's evidence fails to show that there were any screened seats on the said premises when the lease was executed. No question of maintenance or repair was submitted by plaintiff's submission of defendant's failure "to provide a reasonably safe means, immediately next to and adjacent to the screened seats, for its patrons and customers to enter and to exit from the said seats * * * behind the screened backstop." Further, the specific reservations contained in the lease as to refreshments and "upkeep" exclude the theory that defendant nevertheless retained any other possession and control of the leased premises and of any subsequent improvements made by the lessee, so as to impose liability on defendant in the respects submitted to the jury by plaintiff's Instruction 1.

Respondent also cites cases where the evidence disclosed a dangerous or defective condition of the premises at the time the lease was executed and transfer of possession made or where the existence of such defective condition at such time could be inferred from the facts shown. Brown v. Reorganization Inv. Co., 350 Mo. 407, 166 S.W.2d 476, 480(6) (where the rule relied on is stated); Walsh v. Southwestern Bell Telephone Co., 331 Mo. 118, 52 S.W.2d 839, 843; Kelly v. Laclede Real Estate & Inv. Co., 348 Mo. 407, 155 S.W.2d 90, 97(10), 138 A.L.R. 1065; Barb v. Farmer's Ins. Exchange, Mo.Sup., 281 S.W.2d 297, 303. These cases have no application here since no facts are shown from which an inference can be drawn that the premises were defective, dangerous or unsafe in the respects relied upon when the lease was executed and Association entered into possession. Absent a showing that the screened seats were installed prior to the execution of the lease and were defective and dangerous in the respects claimed there could be no issue of negligence on the charge submitted to the jury, since access and exit could be had from the rear to the area protected by the screen and the entranceway was not unsafe in the respects submitted when the property was leased.

In any event plaintiff did not submit her cause to the jury on any theory that defendant leased premises for use as a baseball field when such premises were defective, dangerous and unsafe for spectators attending the games thereon. The cause was submitted on the theory that defendant retained possession or control and a duty was imposed by law and contract to keep the premises in reasonably safe condition for invitees at the ball game and patrons of defendant's tavern on an area adjoining the baseball field.

■■ If plaintiff was not on premises possessed or controlled by defendant at the time she was injured, the defendant owed her no such duty as was submitted by plaintiff's instruction. Nor did the fact that she visited defendant's tavern and made pur-

chases there, make her an invitee of defendant after she returned to premises not in the possession or control of defendant. The record in this case wholly fails to show facts which in law impose upon defendant any duty in respect to the issue of negligence as submitted by plaintiff. Lahtinen v. Continental Bldg. Co., 339 Mo. 438, 97 S.W.2d 102, 107(4), and see Grimmeissen v. Walgreen Drug Stores, Inc., Mo.App., 229 S.W.2d 593; Clark v. Chase Hotel Co., 230 Mo.App. 739, 74 S.W.2d 498, 502. We do not reach the issue of whether or not under the facts shown there would have been a duty "to provide a protected exit and entranceway to and from the seats located behind the screened backstop in back of home plate", if possession or control by defendant had been shown.

Since no case was made for the jury on the issue submitted, the court erred in overruling defendant's motion for directed verdict at the close of all the evidence and also defendant's motion for judgment notwithstanding the verdict for plaintiff.

The judgment is reversed.

All concur.